### CHARLES WARE v. THE STATE.

*No. 1510. Decided December 16th, 1896.*

**1. Impeachment of a Defendant Witness for Truth and Veracity—Evidence.**

A witness who has testified that he knows the general reputation of the defendant (who had testified in his own behalf) for truth and veracity in the community in which he lived, and that his reputation was bad may further testify that from that reputation the defendant was unworthy of belief on his oath.

**2. Burglary—Evidence of Extraneous Crimes.**

On a trial for burglary, it is error to permit evidence of other extraneous crimes in no manner connected with the burglary.

**3. Defendant as a Witness—His Status.**

When a defendant takes the stand as a witness, he places himself in the same position as any other witness in the case. He may be contradicted or sustained in the same manner and upon the same character of proof. An exception to this rule is that confessions made by him, when under arrest and when he had not been warned or cautioned, cannot be used to impeach him.

**4. Evidence of Other Crimes—Extent of.**

Evidence of extraneous crimes, to be admissible, must be as to contemporaneous crimes or systematic crime, or such as go to the credibility of the witness and the admission of testimony as to charges of other crimes against a defendant witness means legal charges or accusations brought in some form under the law and not charges made by individuals only. And in the admission of evidence of extraneous crimes the State will not be permitted, upon cross-examination of the defendant, or by other witnesses, to prove the details of such crimes and try them against defendant.

APPEAL from the District Court of Tarrant. Tried below before Hon. S. P. GREENE.

Appeal from a conviction for burglary; penalty, two years' imprisonment in the penitentiary.

The indictment charged appellant with the burglary of the house of one W. S. Davis. The house burglarized was a buggy house, and a set of single harness was taken. Defendant's sister, Mrs. Randle, testified that defendant brought to her house the harness which Davis afterwards claimed and identified as that taken from his buggy house, and she delivered the harness to the police officer.

Defendant testified as a witness in his own behalf, and denied that he had burglarized Davis' buggy house; claimed to have bought the harness from Joe Hubbs. On cross-examination, he testified: "I am under indictment in four cases in the District Court and one in the County Court

for burglary and theft. I am charged in the District Court with the theft of two hogs. I did not steal two pigs from Paul Haeger. I did not go with A. Z. Perkins down on the Mansfield road, on Sycamore Creek, and steal any pigs out of a pen belonging to Paul Haeger. I did not steal any harness from C. D. Brown, or H. C. Howell, or F. W. Race, or any hay from T. D. Davis, or any chairs from Hartshorn Bros., or any silver cup from. Mrs. Ewing. There is now a silver cup at my house, which I got from Ed. Winters. I knew that Mrs. Ewing had lost same, and when I saw Winters with it, I got it from him, and sent word to Mrs. Ewing that I had it, and for her to come and get it. I did not hide this cup in a trunk at my house. I used a set of harness that I had on my horse at Tyler's Lake, at the Woodmen's picnic, in May. I got this harness from Joe Hubbs; also traded him two pigs for it. Yes, somebody took the breast part of said harness off at said picnic, and I had to use ropes to get home with. I told Officer C. R. Scott, the night before I was arrested, at my house, when they came and took away the harness, that I had used at the Woodmen's picnic, that I got said harness from Joe Hubbs, and traded him two pigs for same. These are the harness claimed as the Brown harness."

A. Z. Perkins, for the State, testified: "Last November, the defendant and I went out on the Mansfield road on Sycamore Creek, and stole two pigs from Paul Haeger. We went out to the house of H. C. Howell in December, 1895, and defendant went into the barn of said Howell and stole a set of harness, while I sat in the wagon back of the barn. We stole feed and hay and chickens, and anything else we wanted or needed. Defendant and I also went into the barn of C. D. Brown about this time and stole a set of harness.

Ira Butler, for the State, testified: "I am a policeman in the city of Fort Worth. Several days after the arrest of defendant, I went, with a search warrant, to Ware's house for the purpose of searching it. I found in a trunk a silver cup."

Mr. Gwinn, testified: "I live near the defendant, and the day of the Woodmen of the World picnic, I found a breast-strap, belonging to J. I. Peters, on the defendant's horse; this breast-strap was in my possession and at my house when I last saw it before finding it on defendant's horse. I have seen defendant within two weeks of the time of his arrest leaving home after night."

*Lattimore & Roy*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of burglary, and given two years in the penitentiary, and appeals. While the witness, Gunnels, was on the stand as a witness in behalf of the State, he was permitted to testify that he knew the general reputation of the defendant for truth and veracity in the community in which he lived, and that his reputation was bad, after which he was permitted, over objection,

to further testify that, from that reputation, the defendant was unworthy of belief on his oath. This was objected to. There was no error in this matter, as has been frequently adjudicated in this State, and is settled adversely to the defendant's contention. By bills of exception it is shown that the State was permitted to prove that defendant had stolen two pigs from one Paul Haeger; that he burglarized the carriage house of one H. C. Howell, at which time he had committed the theft of harness; that he also stole a set of harness from C. D. Brown, and some hay from Mr. Jackson, and a silver cup from Mrs. Ewing. The State was also permitted to prove, by Butler, a policeman, that, a few days after the defendant's arrest, he went with a search warrant to the defendant's house, and found a silver cup in his trunk. To all of this testimony the defendant objected, upon various grounds. We think the exceptions were well taken. When a defendant takes the stand as a witness, he places himself in the same position as any other witness in the case. He may be contradicted or sustained in the same manner and upon the same character of proof. This is the general rule. There are, perhaps, some exceptions to this rule. As was held in the Morales case, ante p. 234, where a defendant was under arrest, and made a confession without being properly warned or cautioned, this character of testimony could not be used to impeach him. But that question is not involved in this case, and the general rule applies here. We have heretofore held, and still hold, that it is permissible, when tending to establish identity, intent, or to develop the res gestæ, to prove contemporaneous crimes; and this can be done, also, when the object is to show system in crime, and the defendant can be asked of this character of evidence the same as any other witness. It has also been held by this court that it can be shown, in order to attack the credibility of a defendant witness, that he has been charged with other crimes, that he has been in jail under arrest for other crimes, etc. Perhaps it may be proper here to state that, when the decisions refer to that character of testimony, where a party is charged with crime, it is to be understood to mean accusations brought against parties in some form under the law, and not intended to mean that, because some party had said the defendant witness was guilty of some offense, that character of testimony could be used. Wherever the expression occurs in the opinions, that charges against a defendant witness can be used against him, it means legal charges or accusations. It will be seen, in this case, that the court permitted the State to investigate crimes in their details, and prove, by the testimony, that the defendant had been guilty of various burglaries and thefts in no wise connected with the one on trial. They were not introduced with reference to the identity of this transaction, or with reference to the intent of defendant in committing the burglary in this case, or as to developing the res gestæ of this transaction. They may or may not have been contemporaneous crimes; but, when contemporaneous crimes are admitted for the various purposes for which they may be used, it means that character of contemporaneous crimes that shed some light on the transaction

then under discussion. The defendant·may have committed the burglary and stolen the property of other people. He may have stolen Mr. Haeger's pigs, or Mrs. Ewing's cup, or Mr. Jackson's hay. But they are not shown to have had any connection with, or to shed any light upon, the question that was then being tried before the jury. Under the bills of exception, they are not shown to have been legal accusations; but, if they had been, and as legal accusations were admissible against him to impeach his integrity as a witness, still the State would not be permitted to go into the details of those transactions, and prove, either by him as a witness, or by other witnesses, that he was guilty of those transactions. In other words, the State would not be permitted, upon the cross-examination of the defendant, or from the testimony of other witnesses, to prove the details of these extraneous crimes, or to step aside and try some other offense against defendant. If the State were permitted to go into the details of these extraneous crimes, and prove the guilt of the accused in all of those cases, then the defendant would have the right to prove any defensive matter to same, or show his innocence; and, instead of trying defendant upon the question raised by the indictment under which he is being tried, he is tried for every act of his life involving violations of the law, and thus the trial would be interminable. This would not be permissible, in the very nature of things, under our system of jurisprudence. The judgment is reversed, and the cause remanded.

*Reversed and Remanded.*