### VERNOR HILL v. THE STATE.

No. 2653. Decided March 26, 1903.

**1.—Burglary—Testimony as to Another Similar Crime by Defendant.**

On a trial for burglary, it is not permissible to prove that on the same night, but at a different time and place, defendant and his confederate had burglarized another house.

**2.—Same.**

Proof of other distinct crimes than the one on trial is not admissible, unless it is res gestae, or serves to identify defendant, or to prove system.

Appeal from the District Court of Lampasas. Tried below before Hon. John M. Furman.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. H. Browning* and *Walter Acker,* for appellant, filed an able brief, and, as to the illegality of the evidence of another burglary by defendant than the one for which he was being tried, cited the authorities set out in the opinion.

*Howard Martin,* Assistant Attorney-General, for the State.

, BROOKS, Judge.—Appellant was convicted of burglary, the penalty assessed being two years confinement in the penitentiary.

By the first bill of exceptions it is made to appear that the accomplice, Engram Murray, was permitted to testify that on the night of the 4th of August, 1902, he went to the saloon of J. A. Tillman, and by appointment found appellant there, and remained until 1 o'clock. That afterwards he and defendant went to a chile stand, waked up the Mexican, ate a plate of chile and a watermelon. Subsequently witness and defendant proceeded to the saloon occupied by Tillman, and witness broke a pane of glass out of the window, removed the stick from top of window, and witness and defendant entered the saloon, with the intention of taking the money they might find; and before they had time to take anything from the saloon they heard some one ride up to the back of the saloon, whom they recognized as City Marshal King. King called to them to come out. That witness pulled off his shoes, and told defendant to do likewise, and started to the front door, and, hearing noises at the front door on the outside, they broke open a door on the inside of the saloon, leading upstairs; and finally witness and defendant got out on the tin roof of an adjoining building, and then got off the building, and witness told defendant to crawl under the house, and witness did crawl under the house, and saw no more of defendant. When defendant was last seen by witness he was in the alley between the two buildings, one of which witness crawled under, where witness was captured about daybreak, and placed in jail. That after said witness Murray had testified as detailed, the State, over the objections of appellant, was permitted to prove by witness Murray the following: That, after having left the saloon of Tillman at the time it was closed up, a few minutes after 1 o'clock, and before witness and defendant had awakened the Mexican at the chile stand, witness and defendant went down East Third Street to Polsgrove's corner, turned to the right between Lampasas Hotel and Mrs. Rugeley's boarding house, and went out and stopped under a mesquite tree; and from there proceeded in the direction of a lumber yard, and turned up an alley, went to the rear of W. M. Patton's saloon, which fronts on the public square of Lampasas, and a distance of fifty yards from J. A. Tillman's saloon, which defendant is charged with burglarizing in the case on trial; that when they reached the rear of Patton's saloon defendant took a rock and broke a pane of glass in the window, raised it, and both witness and defendant entered Patton's saloon; that witness had worked in the saloon prior to that time, and knew the location of the money drawer; that they did not strike a light, but went behind the bar, and witness found and pulled open the money drawer, and got therefrom $2.10 in money in quarters, dimes, and nickels; that defendant said, "I will get a bottle of whisky;" that witness did not want whisky, and does not know whether defendant got any whisky. Witness then details the whereabouts of himself and defendant after the burglary of the Patton saloon. Appellant objected to said testimony in so far as the same tended to show and did show

the burglary of the Patton saloon, because immaterial, inadmissible, and threw no light upon the burglary of Tillman's saloon, for which defendant was on trial; and because it clearly appeared that the burglary of Patton's saloon and the burglary of Tillman's saloon were separate and distinct offenses committed at different times and places; and because the burglary of Patton's saloon had been fully completed before any attempt was made to burglarize Tillman's; and because the burglary of Tillman's saloon was not contemplated between the parties until after the burglary of Patton's saloon, and the burglary of the Patton saloon did not in any manner identify the two offenses; it did not tend to show the intent which the parties may have had in burglarizing Tillman's saloon; and the admission of the burglary of Patton's saloon was calculated to prejudice the jury against defendant, was no part of the res gestae of the burglary of Tillman's saloon, and did not tend to show system in the commission of said offense. And this bill further discloses that appellant objected to the introduction of the testimony of R. M. King to the effect: "On the morning after Engram Murray had been arrested for the burglary of Tillman's saloon, I went to the rear of Patton's saloon, which fronts on the public square, and is 75 or 100 yards distant from Tillman's saloon, and found a pane of glass gone out of the window, a rock lying on the ground just under the window. After Murray was arrested, I took from him $1.90 in money—seven quarters, a dime and a nickel. I found 35 cents on the roof of the building on the morning after Tillman's saloon had been broken into. Murray was arrested before daybreak, and was captured under the Polsgrove building, on the same block as the Tillman saloon. Defendant was brought to me by Bob Higdon between 9 and 10 o'clock the same morning, and I took from him 25 cents. And I gave the money taken from Murray and that found on the roof to Patton, and gave the money taken from defendant back to him." Appellant also insists the court erred in permitting the witness Patton to testify that he left his saloon about 8 o'clock on the night Tillman's saloon was burglarized, leaving Lee Frazier in charge, and when witness came back about daybreak next morning he found the pane of glass broken, and the stick down from the window, and a rock lying beneath the window. City Marshal King gave him $2.25 in money. Don't know whether there was any money in the drawer that night, and can not identify the money as his. Witness Young testified substantially as did the other witnesses about the condition of the buildings. Appellant further objects to this testimony because it tended in no way to connect defendant with the breaking of the Tillman saloon; nor was it in corroboration of the accomplice, Murray, as to the breaking of Patton's saloon, as it showed only the commission of the offense, and did not tend to connect defendant therewith, except by accomplice's testimony.

It will be noted from the objections above detailed that the main insistence urged by appellant is that the proof of the burglarizing of the Patton saloon was not germane to the trial of the charge of burglarizing

the Tillman saloon. Appellant's contention is correct, and we hold the grounds urged were legitimate and proper objections to the admission of said testimony. In the able brief filed by appellant the following cases are cited: Welhausen v. State, 30 Texas Crim. App., 623; Marshall v. State (Texas Crim. App.), 22 S. W. Rep., 878; Williams v. State, 38 Texas Crim. Rep., 128; Unsell v. State, 39 Texas Crim. Rep., 330; Long v. State (Texas Crim. App.), 47 S. W. Rep., 363; James v. State, 40 Texas Crim. Rep., 190; McIver v. State (Texas Crim. App.), 60 S. W. Rep., 50; Denton v. State, 42 Texas Crim. Rep., 427; Scott v. State (Texas Crim. App.), 68 S. W. Rep., 680. In Kelly v. State, 31 Texas Crim. Rep., 211; Hamilton v. State (Texas Crim. App.), 24 S. W. Rep., 32, and Fielder v. State, 40 Texas Crim. Rep., 184, we held that burglaries committed contemporaneously with the one on trial were admissible, but in the opinion of the writer said cases to that extent should be overruled. It is not admissible to prove one crime, and then prove independent and distinct crimes other than the one on trial, for any purpose, unless it be a part of the res gestae, serve to identify defendant, or to prove system of sales, as in local option cases. The fact that appellant commits one crime is not legal evidence of the fact that he committed another. It could only serve, as appellant says, to prejudice the jury against him, could throw no light upon the transaction, does not serve to show criminal intent; nor does the fact that he burglarized one house render it probable, in contemplation of law, that he burglarized another, unless it be upon the theory of proving his character, and thereby render probable the commission of the crime on trial. This is not permissible under any rule of law.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge, and HENDERSON, Judge.—We agree to reversal, but not to overruling Kelley, Fielder and Hamilton cases. We do not think it necessary to enter into a discussion of those cases in this case, for under those cases this judgment is reversible.