## HENRY PACE v. THE STATE.

### No. 370. Decided January 26, 1910.

**1.—Murder—Statement of Facts—Judge.**

Where upon appeal from a conviction of murder it appeared from the record that the time of filing the statement of facts had been extended by the trial judge in the case, in compliance with section 7 of the Act of the Thirty-first Legislature, the motion by the State to strike out is overruled. ·

**2.—Same—Evidence—Other Transactions.**

Upon trial for murder it was reversible error to admit in evidence testimony giving the details of a controversy between defendant and a third party shortly before the alleged homicide, which testimony could throw no light upon the subsequent homicide; although so much of said testimony which simply related to the inquiry by defendant as to why said third party had told the deceased to kill defendant's hogs if they got into his crops and the reply thereto, was admissible; but all the testimony which related to defendant's assault and abuse of said third party was inadmissible. Following Brown v. State, 54 Texas Crim. Rep., 121, and other cases.

**3.—Same—Accomplice—Charge of Court.**

Where upon trial for murder it was not clear whether a certain State's witness was an accomplice, there was no error in submitting this issue to the jury.

**4.—Same—Charge of Court—Accomplice.**

Where upon trial for murder the court's charge on accomplice testimony instructed the jury that if said testimony tended to show the guilt of the defendant and there was other testimony tending to connect the defendant with

the commission of the offense, to convict him, the same was reversible error. Following Oates v. State, 51 Texas Crim. Rep., 449.

**5.—Same—Argument of Counsel—Conclusion of Counsel.**

Counsel should never attempt to state a proposition to the jury in such a way as to leave the inference that they knew a fact that might be damaging to the defendant, or a witness.

Appeal from the District Court of Cass. Tried below before the Honorable P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*Hart, Mahaffy & Thomas,* and *O'Neal & Figures,* for Appellant.— On question of admitting other transactions not connected with the homicide: Shera v. State, 30 Texas Crim. App., 349; Richardson v. State, 32 Texas Crim. Rep., 524; Long v. State, 39 Texas Crim. Rep., 537; Williams v. State, 38 Texas Crim. Rep., 128; McAnally v. State, 73 S. W. Rep., 404; Herndon v. State, 50 Texas Crim. Rep., 552; 99 S. W. Rep., 558; Brown v. State, 54 Texas Crim. Rep., 121; 112 S. W. Rep., 80. On question of court's charge on accomplice testimony: Newman v. State, 55 Texas Crim. Rep., 273; 116 S. W. Rep., 577; Tate v. State, 55 Texas Crim. Rep., 397; 116 S. W. Rep., 604; Conant v. State, 51 Texas Crim. Rep., 610; 103 S. W. Rep., 897; Oates v. State, 51 Texas Crim. Rep., 449; 103 S. W. Rep., 859. On question of argument of counsel: Jenkins v. State, 49 Texas Crim. Rep., 457; 93 S. W. Rep., 726; Rearden v. State, 47 Texas Crim Rep., 271; 79 S. W. Rep., 37.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—In this case the State has filed a motion to strike out statement of facts on the ground that the same was not filed within the time required by law. The court began on the 23rd day of August, 1909, and adjourned on the 16th day of September, 1909. An inspection of the record shows that the appellant was granted thirty days in which to file statement of facts; that before the expiration of that time the appellant made an application to the district judge to extend the time allowed by law in which to file statement of facts, and the application was granted by said Judge, and the time allowed for filing such statement of facts was extended by said Judge until November 1, 1909, and the statement of facts shows to have been filed before the expiration of the time granted in the order by the trial judge extending the time. Section 7 of an Act passed by the Thirty-first Legislature prescribing the duties of stenographers and preparations of statements of facts, as found on page 376, provides: "When an appeal is taken from the judgment rendered in any cause in any District or County Court, the parties to the suit shall be entitled to thirty days after the day of

adjournment in which to prepare and file statement of facts and bills of exception; and upon good cause shown the judge trying the cause may extend the time in which to file the statement of facts and bills of exception; and this power to extend the time is granted the court to be exercised, either in term time or vacation, upon the application of either party for good cause." The time having been extended by the district judge in this case in compliance with section 7 of the above recited Act, the motion of the State will be denied.

The appellant was convicted in the court below of murder in the second degree, and his punishment assessed at confinement in the penitentiary for fifty years. From this conviction he has appealed and assigns various reasons why the case should be reversed. The facts in this case show that appellant, Henry Pace, resided in Bowie County on the north side of Sulphur River; that Sulphur River was the dividing line between Bowie and Cass counties; that the deceased, Felix Grundy lived some mile and a half from Sulphur River, and on the south side of the river. The stock law was in force in Cass County but not in Bowie County, the home of appellant. Appellant, on his farm on the north bank of Sulphur River, kept a hog ranch. His hogs had been accustomed to getting out and crossing the river into Cass County and getting into the field of Felix Grundy, the deceased. Grundy had taken these hogs up several times and had notified appellant. Appellant would go and get the hogs and had notified deceased that if his hogs bothered him any to take them up and notify him and he would come and get them and pay him for his trouble. It seems that Pace, the appellant, and one Cain were partners in this hog ranch, and that Cain lived close by where the appellant lived, but on the south side of the river. It appears that on Sunday, the 25th day of July, 1909, the deceased, Felix Grundy, appeared at the place of appellant and notified him that he had taken up some of his hogs that were depredating upon some of his crops and wanted appellant to come and get them. Appellant agreed to go, the deceased stayed at appellant's house some four or five hours; appellant gave him his dinner and deceased assisted in hitching up the team when they started over to the deceased's house to get the hogs. They went by and got Cain and one Watt McLimore accompanied them also. Watt McLimore lived with Cain but was over at Pace's house Sunday when the deceased arrived. The parties, all of them, were drinking some, and when they arrived at the home of the deceased, Felix Grundy, he was so drunk that they had to lift him out of the wagon, and his wife assisted him to the gallery where he lay down. Appellant, Pace, Cain and McLimore went on further south to the home of Mr. Rhudy, who lived some three-quarters of a mile south of where Felix Grundy lived, and on the same plantation with Rhudy and on what is known as the Moore or Simmons farm. The witness, Rhudy, testifies: "The first I seen of Mr. Pace was when he came around the corner of the yard fence, toward the side gate, in my premises. The road does not pass right by my place or come up to the gate; the road runs down a little distance from the house. My house

fronts south . . . and the road comes down from Sulphur River on the east side of my premises;" that when the appellant came around the house he asked witness' son where Frank Hill was; that his son told him Frank Hill was in the house; that appellant told his little grandson Ray to go and tell Frank to come out there, and about that time Mr. Cain and Watt McLimore came up from opposite the blacksmith shop and one of these parties called Frank to come out to the front gate. This was about five 'clock in the evening. Appellant, Pace, spoke to the witness and said: "I come here to raise hell with you." The witness remonstrated with him for talking that way in presence of his family. Some words passed between them when the appellant asked the witness why had he instructed this negro down here on the place to kill his hogs. He called no names. Now, over the objection of appellant, the State was permitted to prove by this witness and also the witness Frank Hill that the appellant was very quarelsome and abusive; that he denounced the witness Rhudy; that he denounced Hill; that he made an assault upon Hill, seized him by the collar and cursed him; that the parties were drinking whisky all the time. Appellant declared that he had come there to whip Frank Hill, and in fact the State was permitted to go into all the details of the conversation, the conduct of appellant, the assault upon witness' son-in-law and this over the objections of appellant. After remaining at this house awhile the three parties, Cain, McLimore and appellant, returned to the home of the deceased, and shortly after they arrived at the deceased's house the deceased was killed by being shot. Some of the witnesses testify that Cain shot the deceased. The wife of deceased says that Pace shot him. Some of the witnesses say that Cain paid the negro 60 cents for taking up the hogs, and when he handed him the 60 cents, stated to the deceased, "I find only six hogs and you had nine up. I saw blood around the lot; you had better account for the other three hogs," when deceased replied that he had killed the hogs and would kill Cain and reached for his gun that was by him on the porch, when Cain shot him. The wife of deceased testified that deceased was on the porch sitting down with his back leaning against the wall; that she was by her husband and that the appellant was in the wagon and said to her to get out of the way and told the appellant that it was time for him to pray, and without cause and without any reply being made by her husband, shot and killed him. This is a sufficient statement of the facts to make plain the objections raised by the appellant.

We find in the record bill of exceptions No. 3, and here the bill will be set out in full with the qualification of the Judge: "Be it remembered that upon the trial of the above entitled and numbered cause that the State offered to and did prove by its witness, S. T. Rhudy, that defendant came to his, Rhudy's, house at about 5 o'clock p. m., on Sunday, July 25th, 1909, and prior to the killing of the deceased, and stated to him, Rhudy, on the gallery of his said home that he, defendant, had come there to raise hell, that he would kill any man who killed his

hogs, and would whip any man who took it up, that he would as leave die then and there as anywhere else, and that when he, Rhudy, remonstrated with defendant for using such language in the presence and hearing of his, Rhudy's, family and said he was liable to prosecution, that defendant stated that it made no difference, that he, Rhudy, would get the worst of the prosecution. To all of which defendant then and there objected upon the ground that the same was immaterial, irrelevant to any issue in the case; that it threw no light upon the killing of Felix Grundy, and was calculated to prejudice the jury against him. All of which objections the court overruled and permitted the witness to testify as above stated, to all of which the defendant then and there excepted and now here tenders his bill of exceptions and prays that the same be allowed, approved and ordered filed as a part of the record in this case." The bill is qualified by the Judge as follows: "This bill is all right as far as it goes, but it does not go far enough to make it a fair bill. It is true that the witness testified to the facts set forth in the bill, but he further testified that the defendant was a stranger to him and that he did not understand his conduct and he asked him what he meant and what this was all about, and that defendant replied: 'You told this negro down here on the lower end of your farm, meaning Felix Grundy, to kill my hogs if they got in his crop.' Rhudy says, 'I did not even know that your hogs had been trespassing on his crop.' The negro was a tenant on Rhudy's place. It was further shown that the defendant had come for the express purpose of seeing Rhudy about telling the negro to kill defendant's hogs, defendant had just come from the negro's house and went immediately back to the negro's house and killed him in thirty minutes after he left Rhudy's house. The State contended and established that defendant killed the negro about his hogs. With this explanation and addition the bill is allowed and ordered filed." Now, the testimony complained of as to what the appellant did at Rhudy's house was objected to upon the ground that the same was immaterial, irrelevant to any issue in the case; that it threw no light upon the killing of Felix Grundy and was calculated to prejudice the jury against the appellant. We are inclined to think that the court below erred in admitting this testimony and that the admission of this testimony was prejudicial to the appellant and hurtful to him. We are further of the opinion that so much of the testimony of Rhudy as to the appellant asking him if he had told the negro to kill his hogs if they got in his crop, and Rhudy's reply thereto, was admissible, but that part of the testimony that relates to appellant assaulting the said Rhudy and the said Hill and cursing and abusing them was not admissible. This question has been before this court in a number of cases, and this court has in all the cases held that such testimony was not admissible against a party on trial. It is never permissible to introduce testimony of extraneous crimes, unless the same would develop the res gestae, intent, system or identity of the parties. See Brown v. State, 54 Texas Crim. Rep., 121, 112 S. W. 80; Sherar v. State, 30 Texas App., 349; Richardson v.

State, 32 Texas Crim. Rep., 524; Long v. State, 39 Texas Crim. Rep., 537; Williams v. State, 38 Texas Crim. Rep., 128; McAnally v. State, 73 S. W., 404; Herndon v. State, 50 Texas Crim. Rep., 552; 99 S. W., 558. In Brown's case, supra, this court held that it was error for the court below to allow the State to prove that Brown had a difficulty with one Bob Miller a few minutes before the difficulty with Albert Sidney Johnson, the man whom he killed. When Brown was placed on the stand the State, over his objection, was permitted to interrogate Brown as to the particulars of the difficulty he had with Miller, and that he stood with his hand on his pistol and cursed and abused the said Bob Miller and that he had slapped his jaws. This court in passing upon this question stated: "When it was proposed to go into this matter, and the first inquiry was made in respect thereto, appellant objected to the question, and objected to any inquiry into the details of the difficulty with Miller, or evidence of any of the details of his difficulty with a third party, as not having any connection with the homicide on trial, except insofar as it may have affected appellant's apprehension and fear from the apprehended attack from Miller, and whether appellant was right or wrong in the difficulty with Miller could not be used as a circumstance against him, and the testimony was inadmissible, irrelevant and immaterial, and contained and related to extraneous matters hurtful and prejudicial to him. After the cross-examination of appellant, the State introduced both A. B. Tabor and Bob Miller in rebuttal, who testified at great length as to the details of said difficulty between appellant and Miller prior to the homicide, and each of said witnesses was permitted to give his version of what occurred in such controversy. We think that, as presented, these objections should have been sustained. Appellant had gone no further in his testimony than to assert as a fact some prior difficulty with Miller. This was not only admissible, but important, as throwing light on his claim that he believed, when he saw Miller and Johnson in conversation and looking in his direction, that, in view of such former difficulty and conference, their conversation related to him. It would, of course, have been admissible for the State to have shown that in fact no such difficulty or controversy with Miller had taken place, and it might have been proper to have shown that, if in fact there had been such controversy, it was not of such gravity as would fairly have justified Brown in believing that the conversation between the parties named had any reference or relation to him; but it can not be claimed that the testimony elicited from appellant, or produced from Miller and Tabor, stopped here. On the contrary, the effect of it was probably to place appellant in a bad light before the jury and to prejudice his case. It is always a safe rule to limit, as far as practicable, evidence to the very matter and case in hand, and to exclude admissions and testimony of extraneous offenses, contests, controversies and difficulties. Ware v. State, 36 Texas Cr. Rep., 597, 38 S. W. Rep., 198; Brittain v. State, 36 Texas Cr. Rep., 406, 37 S. W. Rep., 758; Morrison v. State, 40 Texas Crim. Rep., 473, 51 S. W. Rep., 358; Woodard v. State, 51

S. W. Rep., 1122; Barkman v. State, 41 Texas Crim. Rep., 105, 52 S. W. Rep., 69; Chumley v. State, 20 Texas Cr. Rep., 547." We, therefore, think the court erred in admitting the details of the conversation, conduct and acts of appellant at the home of Rhudy.

The next bill of exceptions, No. 4, which is similar to the previous bill of exceptions, that is, it was to the action of the court in permitting Frank Hill to testify that appellant at Mr. Rhudy's house on the evening of the killing and just prior to the killing, caught the witness in the collar and told him, "God-damn you, I believe I will whip you anyway." Appellant objected to this on the same grounds as the objections to Rhudy's testimony. Under the authorities cited this bill of exceptions was well taken and the court below erred in permitting the testimony.

On the trial of the case the State placed Watt McLimore upon the witness stand and he testified; his testimony was very damaging to the appellant. He claimed that he was present when the difficulty took place and that appellant did shoot the deceased. He furthermore testified that after the killing he, together with Cain and appellant, entered into an agreement to manufacture a defense in the case and that they fixed up the plan that they would all agree to get a certain witness by the name of Don Cochran to testify in the case that he was out on this Sunday riding around, and that as he approached the house of the deceased he saw Dick Cain whirl and grab his gun and whirl back and shoot, and that before this that the deceased had stated to the said Cain that he had killed three of the hogs, and "God-damn him," he would kill him and grabbed for his gun. The witness McLimore testified that this was the agreement that was entered into after the killing, and that such testimony was false and fabricated and that no such thing occurred. It may be further remarked that McLimore was not indicted, but he, in company with Cain and Pace, had been denied bail and was in jail at the time of the trial and had been since the killing. Now, the court submitted to the jury the issue as to whether the witness McLimore was an accomplice, and left it to the jury to decide whether he was or not. Complaint is made of this and appellant contends that the court should have charged the jury as a matter of law that McLimore was an accomplice. We are of opinion that the court did not err in submitting this issue to the jury. It might be proper to state that wherever the court leaves it to the jury to pass upon the question as to whether a witness is an accomplice the court ought to give the jury a guide to determine this, and we think the court correctly defined an accomplice in the charge given. The court gave the following charge to the jury on the subject of accomplice: "A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offense committed and the corroboration is not sufficient if it merely shows the commission of the offense. An accomplice, as the word is here used, means anyone connected with the crime committed, either as principal offender, as an accomplice, as an accessory, or otherwise. It includes

all persons who are connected with the crime by unlawful act or omission on their part, transpiring either before, at the time, or after the commission of the offense, and whether or not he was present and participated in the commission of the crime. Now, if you are satisfied from the evidence, that the witness Watt McLimore was an accomplice, or you have a reasonable doubt as to whether he was or not as that term is defined in the foregoing instruction, then you are further instructed that you can not find the defendant guilty upon his testimony, alone, even if you believe his testimony is true and it alone satisfies you beyond a reasonable doubt that the defendant is guilty, as charged. But if you believe that his evidence is true, and that it shows or tends to show that the defendant is guilty, as charged, and that there is other evidence in this case outside of his, tending to connect the defendant with the commission of the offense charged in the indictment, then you may convict defendant, if from the whole evidence you believe beyond a reasonable doubt, that defendant is guilty." Now, it will be seen by this charge that the court charged the jury that if they believed said McLimore's testimony was true and that it showed or tended to show that the defendant is guilty and that there is other evidence tending to connect the defendant with the commission of the offense, then to convict defendant. This charge has been condemned by this court in a number of cases. In the case of Oates v. State, 51 Texas Crim. Rep., 449, 103 S. W. Rep., 859, the charge of the court below was similar to the charge in this case and in that case the court directed the jury that if they believed the accomplice's evidence true and that it shows or tends to show defendant is guilty, etc. In commenting on this charge this court says: "The main portion of the charge is stereotyped as to the definition of an accomplice, and who they are and what it takes to constitute an accomplice. This charge is in our judgment clearly erroneous. It authorizes the conviction of appellant upon the testimony of an accomplice which 'tends' to show that appellant committed the offense charged, provided he is corroborated by evidence 'tending' to connect the defendant with the offense. So this charge, condensed, may be stated to announce the proposition that, if an accomplice detailed evidence which 'tends' to show an accused party guilty, it is sufficient, provided there is corroboration tending to connect the defendant with the offense charged. So we have, in the place of evidence which must prove beyond a reasonable doubt the guilt of the accused, facts from two sources, one legally discredited, which tends to show guilt. This is not legally sufficient. Facts must do more than 'tend' to show guilt. They must be cogent enough to overcome the presumption of innocence and reasonable doubt. There may be quite a mass of testimony which would tend to show guilt; but, even in a case of circumstantial evidence, these facts must be of sufficient cogency to exclude every reasonable hypothesis except that of guilt. Statements of an accomplice tending to show the guilt of an accused, aided by facts tending to show it from another

Vol. LVIII. Crim.—7.

source, does not meet the requirements of the law. This charge is without precedent, so far as we have been enabled to ascertain, and for the first time a charge of this sort has been brought to the attention of this court." This charge was excepted to at the time and was also assigned as error in the motion for new trial. We think the court erred in giving this charge and that it authorized the jury to convict if the testimony of the accomplice "tended" to prove appellant's guilt. This is not the law, and the court below erred in giving this charge.

There are quite a number of other questions raised in the record. We do not deem them, however, of sufficient importance to require us to pass upon them. Some of them are not likely to occur upon another trial. We are not prepared to say that the argument of the district attorney complained of in appellant's bill of exceptions would authorize a reversal of the case. However, we would remind prosecuting officers in the discussion of cases before the jury to confine themselves to a discussion of the facts of the case. They should never attempt to state a proposition to the jury in such way as to leave the inference that they knew a fact that might be damaging to a defendant, or a witness. If they are in possession of a fact which would be legitimate testimony this should be given from the witness stand and not from their place at the bar as an advocate.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*