### SCOTT v. STATE. (No. 6913.)

(Court of Criminal Appeals of Texas. Feb. 14, 1923. Rehearing Denied June 27, 1923.)

1. Criminal law ⬉369(15)—Testimony admissible to show identity, although tending to prove commission of other offenses.

In a prosecution for robbery, where the defense was an alibi, testimony in behalf of the state that accused and companions, on the night of the alleged offense, were seen and observed together; that one of them impersonated an officer and searched the house of witness for liquor; ·that they fired a pistol at another witness—*held*, admissible as tending to contradict the defense of alibi, and also as tending to identify defendant and his companions, and for the purpose of corroborating the prosecuting witness and showing the proximity of accused and his companions to the scene of the robbery, notwithstanding that such testimony also tended to prove the commission of other independent offenses.

2. Criminal law ⬉1173(2)—Omission to restrict testimony tending to show other offenses to purposes for which properly admissible held not reversible error.

In a prosecution for robbery, where the defense was an alibi, and evidence was received to contradict such alibi, tending to show that accused and his companions were seen together on the night of the offense in the commission of other independent crimes, *held*, that the omission of the court to limit consideration of such testimony to the purposes for which it was properly admissible was not reversible error, under Code Cr. Proc. 1911, art. 743, forbidding reversal, except for harmful error.

Morrow, P. J., dissenting on motion for rehearing.

Appeal from District Court, Clay County; H. F. Weldon, Judge.

H. T. Scott was convicted of robbery, and he appeals. Affirmed.

Shields Heyser, of Wichita Falls, and R. E. Taylor, of Henrietta, for appellant.

R. G. Storey, Asst. Atty. Gen., for the State.

HAWKINS, J. The conviction is for the offense of robbery; punishment fixed at confinement in the penitentiary for a period of 12 years.

Givens kept a country store. According to his testimony, and that of his wife, the appellant and one Fields came to his store at nighttime and, both exhibiting pistols, robbed Givens of a sum of money. This took place at about 11 o'clock at night. Appellant and Fields came in a large automobile, and a woman, who was with them, remained in the car during the robbery. They left, going in the direction of Wichita Falls. Givens notified the police at Wichita Falls of the occurrence and went to that city, where later, at the City Hall, he found the appellant and Fields and a woman called Goldie. One of the parties in making the robbery had a flashlight in his possession. It was a moonlight night. The distance from Dean to Wichita Falls was about 11 miles. Upon the testimony of Givens, the state rested its case.

Appellant introduced several witnesses, each of whom testified to different circumstances establishing, if true, an alibi. One witness said that he met appellant in Wichita Falls about the time of the robbery; that appellant was alone on foot, intoxicated, and was taken home by the witness. Another witness testified that at the time of the robbery Fields was at the home of his father, some 20 or more miles from the scene of the offense. Still another testified that Fields was at a point far distant from the place at which the offense took place. Both of these witnesses claimed that Fields and appellant were not in company with each other and not in appellant's automobile, not in company with a woman, and not in the vicinity of Dean, where Givens' store was situated.

In rebuttal, the state introduced the witness Virgil Johnson, who said that he saw the appellant on the night of the robbery about 150 yards from the Dean and Wichita Falls Road; that he was in a car coming from the direction of Dean and going toward Wichita Falls; that, as he passed appellant's car, shots were fired; that, proceeding along the road, the parties in the car fired at the witness; that appellant did the shooting. This occurred about midnight at a point about 6 miles from Dean toward Wichita· Falls. Besides the appellant, there was a man and a woman in the car.

Botenhamer testified that he was acquainted with Fields and saw him on the night of the robbery in an automobile with another man and a woman. He was seen at a point about 5 or 6 miles from Dean, going towards Dean; and he saw them again about 4 miles south of Dean. The car at the time was standing, and one of the men was on the ground; that a gun was fired a time or two. Fields and the woman were sitting in the car. This occurred about 11 o'clock at night. They were later seen about 6 miles from Dean, going in the direction of Wichita Falls. In passing the witness, they fired their pistols.

The witness Forbian testified that on the 10th of October he saw Fields and Scott at his house about 9:30 o'clock; that they were in the back yard. Fields introduced himself as Belcher, an officer sent there by Chief of Police Morgan to search the house. The party, consisting of Fields, Scott, and a woman, were in a five-passenger Buick car.

Taylor testified that he knew Fields; that he saw him on the night of October 10th in Wichita Falls between 12 and 1 o'clock; that he was in a Buick five-passenger car with red wheels; that Fields drove up and asked for "Scotty"; that Fields told the witness to take some things out of his car; that he took therefrom a gun and a searchlight.

George Hawkins, the sheriff, testified that he got a gun and a flashlight at the Hearn Hotel upon information received from Louis Taylor, the porter. The witness searched Scott's car—a Buick five-passenger car with red wheels—and found therein two packages of chewing gum, which was afterwards delivered to Mr. Givens at Dean. The search took place about 2 o'clock at night. The gun found was exhibited at the trial.

[1] The admissibility of the testimony to the effect that the appellant and his companions fired the pistol in the road; that they shot at the witness Johnson; that they impersonated officers and searched the house of witness Forbian—is challenged upon the ground that in each instance the rule excluding extraneous offenses was transgressed. The general rule excluding other offenses is well established. See Underhill on Evidence, § 87, and Texas decisions in note 1. Difficulties are encountered in the effort to determine whether in a given case the facts present an exception to the general rule. See Branch's Ann. Tex. P. C. § 166. One of the exceptions to the rule excluding other crimes is that which, under circumstances, permits their introduction upon the issue of identity. See Underhill on Crim. Evidence, § 91. Of this Mr. Branch, in his Ann. Tex. Penal Code, says:

"When identification of defendant is not sufficiently established, and the proof shows that whoever committed some previous crime committed the one under consideration, proof of the previous offense is admissible to show identity."

The testimony of Johnson, Botenhamer, and Forbian bears upon matters of identity and tends to counteract appellant's alibi. It was contended by the defense that appellant and Fields were not together in a car with a woman at any time, under the circumstances testified to by the state's witnesses. It may be said that proof of another similar and independent crime does not become admissible because of the sheer fact that it happened on the same night. Nunn v. State, 60 Tex. Cr. R. 86, 131 S. W. 320; Pace v. State, 58 Tex. Cr. R. 90, 124 S. W.

949; Owen v. State, 58 Tex. Cr. R. 261, 125 S. W. 405; Brown v. State, 54 Tex. Cr. R. 129, 112 S. W. 80; Hill v. State, 44 Tex. Cr. R. 603, 73 S. W. 9; Woodard v. State (Tex. Cr. App.) 51 S. W. 1122; Hunt v. State (Tex. Cr. App.) 60 S. W. 965; Wigmore on Evidence, vol. 1, § 304. But Forbian's testimony shows that appellant and Fields were together at his house on the night of the alleged offense and had a woman with them in the car; that Fields impersonated an officer and searched his house, ostensibly looking for whisky; that appellant and the woman waited for him while this was being accomplished. While this would perhaps establish the independent crime of impersonating an officer, it at the same time was a part of appellant's and Fields' visit to the home of the witness Forbian; it contradicted the defense interposed by appellant and was so closely interwoven with the conduct of the two parties on the night of the alleged robbery that we have been unable to bring ourselves to agree to appellant's contention that it was not admissible.

In the instant case it seems plausible that if the state in the development of its original case had sought to introduce the testimony of Johnson, Botenhamer, and Forbian it would have been properly rejected because at that time the identity of appellant as one of the assailants of Givens was an uncontroverted fact, proved by direct and positive testimony. After, however, appellant introduced witnesses to show that neither he nor Fields were the parties who committed the robbery, then, manifestly, it was competent for the state to counteract this proof by any competent and relevant testimony it could command. Givens testified that his assailants had pistols; that they came in an automobile; that a woman was with them. Was it not competent for the state to prove that the parties who were seen by Johnson, Botenhamer, and Forbian coincided with this description? In other words, was it not competent to show that appellant and Fields and the woman were on the road at a time and place coinciding with that of the robbery, and that they possessed pistols, and was not proof of the firing of the pistol competent, that being the means by which witnesses ascertained that the pistol or pistols were in their possession? We believe the law requires an affirmative answer to this inquiry. Bedford v. State, 75 Tex. Cr. R. 309, 170 S. W. 728; Stovall v. State (Tex. Cr. App.) 97 S. W. 93; Craig v. State (Tex. Cr. App.) 23 S. W. 1108; Wright v. State, 56 Tex. Cr. R. 357, 120 S. W. 458.

It is contended by appellant that, if the testimony objected to was admissible, then the court should have limited it for the purpose for which it was admitted. Just how the court would have framed a charge suggested by appellant is difficult to conceive. The evidence was admissible, not upon one

point, but upon many. It was usable for the purpose of rebutting the defense of alibi and as contradicting the witnesses who testified upon that issue; also to identify appellant and his companions, and as showing their association and conduct together during the night of the alleged robbery; also for the purpose of corroborating the prosecuting witnesses and showing the proximity of appellant and his companions to the scene of the robbery. For the court to have undertaken to limit this testimony, and at the same time to have prepared a charge not upon the weight of the evidence would have been a task which it appears counsel for appellant himself refrained from undertaking, as no special charge was requested upon this point. It is doubtful in our minds if the court could have given any sort of charge which would have been proper and pertinent unless to have charged the jury that appellant was upon trial for the alleged robbery of Givens and for no other offense, and could be convicted, if at all, for that and no other. No such charge was requested, and no specific objection was made to the court's charge for a failure to embody it. When we look to the objections in writing to the court's charge, filed in compliance with article 735 of our C. C. P., they are entirely silent with reference to any omission upon that subject. The nearest approach to it appears in a bill of exception which recites that, after the charge had been prepared by the court and submitted to appellant's counsel, and before the main charge of the court had been read that appellant presented a motion to the court requesting that the testimony of Johnson, Botenhamer, and Ray and Forbian be withdrawn from the consideration of the jury, and in the event the court should overrule the motion that then appellant moved the court to limit said testimony to the purpose for which the court admitted it. The bill further recites that the court refused to withdraw said testimony or to limit the same, to which appellant reserved his exception. Unless this motion could be construed as a written objection to the court's charge, then there is no such written objection as comes within the purview of article 735. Such an objection could have easily been included among those which were filed in writing to the court's charge, but appellant seems to have rested his right upon taking his bill of exception in the manner hereinbefore set out. We prefer, however, to base our opinion upon a broader ground than the one suggested, if it can properly be done without ignoring the provision of the Code of Criminal Procedure adverted to. It must always be borne in mind that, in determining whether the omission of any particular charge can be regarded as harmful to accused, the offense on trial must be kept in mind. It must be presumed that the jury are men of ordinary intelligence.

[2] In the instant case the jury knew, and could not help from knowing, that the case on trial was a charge against appellant for the alleged robbery of Givens. The indictment so alleged, the charge of the court so stated, and the jury must have known that the other matters were ancillary thereto. Even if it was appropriate for the court to have told the jury that appellant could be convicted of no offense save that of the alleged robbery of Givens, we have been unable to reach the conclusion that the failure to so charge could in any way work to the injury of appellant. Unless we can say that an omission from a charge was harmful, then under article 743 of our Code of Criminal Procedure we have no authority to reverse a judgment on that account. If there had been introduced upon the trial of the instant case evidence of another robbery, the court would probably have been called upon to give a charge such as has been suggested for the protection of appellant's rights and to prevent a conviction for a proved robbery for which he was then not upon trial. This rule will be found exemplified in Thornley v. State, 36 Tex. Cr. R. 124, 34 S. W. 264, 35 S. W. 981, 61 Am. St. Rep. 836; Gilbert v. State, 57 Tex. Cr. R. 85, 121 S. W. 1126; and other cases collated in Vernon's Texas Criminal Statutes, vol. 2, p. 443, note 33. See, also, Parham v. State, 87 Tex. Cr. R. 454, 222 S. W. 561; Fry v. State, 86 Tex. Cr. R. 73, 215 S. W. 560.

Finding no error in the record which in our opinion would justify a reversal, the judgment is affirmed.

### On Motion for Rehearing.

LATTIMORE, J. Upon practically an identical record in a companion case of Fields v. State (No. 6751) 252 S. W. 759, the majority of the court have concluded that no error was committed in the admission of evidence of what is claimed to be other offenses, nor in the charge of the learned trial court in reference thereto. For our views in greater detail upon these questions, an expression of which here would be but a reiteration, see the opinion of the majority upon the original consideration and upon motion for rehearing in the case of Fields v. State (No. 6751) 252 S. W. 759, opinion this day handed down.

The motion for rehearing will be overruled.

MORROW, P. J. (dissenting). In the judgment of the writer, the learned trial judge committed error prejudicial to the appellant in failing to limit to its proper scope the evidence of a collateral crime.

Upon a practically identical record, the views of the writer have been expressed in somewhat more detail in the companion case of Fields v. State (No. 6751) 252 S. W. 759.

FIELDS v. STATE

A reiteration is unnecessary. Suffice it to say that, in the opinion of the writer, the motion for rehearing should be granted. This is said with great deference to my brethren on the bench. The views expressed by them are well considered and may be sound. I am not, however, able to bring myself into accord with them.