**J. J. JOHNSTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 40355.

Court of Criminal Appeals of Texas.

June 28, 1967.

Rehearing Denied Oct. 4, 1967.

Cox & Hurt, by Joe L. Cox, Plainview, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is sodomy; the punishment, 12 years.

The indictment alleged that on or about the 5th day of February, 1966, appellant used his mouth on the sexual parts of one Graham for the purpose of having carnal copulation.

The state's evidence reflects that appellant committed the act as charged in his apartment, in Plainview, upon Graham, a 16 year old boy, in the presence of 16 year old Easley and 17 year old Caddell.

At the time of the offense charged appellant, age 36, was Guidance Counselor in Plainview High School, he having begun such employment the first week in August 1965. Graham and the witnesses Easley and Caddell were among the high school students he counseled.

Graham's version of his involvement with appellant in homosexual acts was that it began about December 1, 1965, when appellant talked to him "about outside life, girls, sex and stuff like that." This was followed by a visit of Graham and one Bowley at the NuGriddle Cafe followed by a ride upon invitation of appellant and, after Bowley was taken home, Graham's first visit to appellant's apartment.

Graham testified that appellant "assured me that he wasn't a queer" and talked about hypnotizing him with a vibrator.

Two or three days later Graham again visited appellant at his apartment at his invitation, and appellant again said he could hypnotize him and it would help him. On this occasion appellant used the vibrator on Graham for some time and then started

putting his hands on Graham's private parts —then pulled Graham's clothes off and "used his mouth" on Graham's penis.

Other acts of oral sodomy committed by appellant upon Graham prior to the return of the indictment and before and after the act of February 5, 1966, were shown by the testimony of Graham, Caddell and Easley, as were acts of sodomy committed upon Caddell.

The first ground for reversal presented by appellant's brief relates to the overruling of his motion that he be allowed to reopen testimony "for the purpose of proving by evidence and testimony that the witness Bowley has made statements to witnesses inconsistent with and contradictory to the testimony that he gave at the trial of the case * * *."

Bowley was called by the state in rebuttal. He testified that on April 1, 1966, he and Eddie Zingerman spent the night in appellant's apartment and that he slept with appellant and that appellant told him that Graham had been over there on several occasions and that he and Graham had had homosexual relationships.

▪ The formal bill of exception does not set out the testimony of the witness sought to be impeached or what appellant proposed to offer as inconsistent or contradictory.

▪ The matter of reopening is discretionary and no abuse of the trial court's discretion is shown. Adams v. State, 154 Tex.Cr.R. 92, 221 S.W.2d 264.

Appellant's next grounds of error relate to the failure of the court to instruct the jury, in connection with his instruction concerning accomplice testimony, that one accomplice cannot corroborate another.

The court charged the jury that Graham was an accomplice witness and properly instructed the jury as to the necessity that his testimony be corroborated.

The objection to the charge complaining of the failure of the trial court to instruct the jury that one accomplice witness cannot corroborate the testimony of another is predicated upon the contention that the state's witnesses Easley and Caddell were accomplice witnesses as a matter of law or, in the alternative, there was a question of fact as to whether or not they were accomplice witnesses.

Neither Caddell nor Easley is shown to have participated in the act of sodomy by appellant on Graham which they witnessed. Neither is shown to have been a principal, accomplice or accessory.

▪ If a state's witness has no complicity in the offense for which the accused is on trial, his testimony is not that of an accomplice, whatever may have been his complicity with the accused in the commission of other offenses. Washburn v. State, 167 Tex.Cr.R. 125, 318 S.W.2d 627, and cases cited; McClanahan v. State, Tex.Cr.App., 394 S.W.2d 499.

▪ Our holding that Easley and Caddell were not under the record accomplice witnesses disposes of appellant's ground of error No. 3 which complains of the overruling of his objection to the charge for failure to instruct the jury that these witnesses were accomplices or to submit to the jury as a question of fact whether or not they were accomplices.

Appellant's ground of error No. 4 relates to his objection No. VIII to the court's charge as a whole because it did not limit the testimony by Graham as to other acts of oral sodomy upon himself by appellant "to a showing, if it does, of unnatural attention toward such witness, if it does, but allows the jury to consider such testimony without restriction and without limitation as to the purpose for which the said testimony was admitted by the court."

▪▪ The trial court did not err in failing to so limit the testimony as to other acts of sodomy committed by appellant on

Graham. The evidence as to such acts was also admissible as evidencing the probability of the act shown by the testimony of Graham corroborated by the testimony of the witnesses Easley and Caddell.

Appellant's fifth ground of error relates to his objection IX to the court's charge "for the reason that said charge does not limit the jury's consideration of questions propounded to the defendant's character witnesses by the district attorney of the nature of 'Have you heard of acts of misconduct by this defendant?' to test such witness' knowledge of the defendant's reputation, and by a failure to limit such testimony and consideration by the jury the court fails to sufficiently safeguard the rights of this defendant."

■ The objection did not point out the questions asked; the name of the witness or the answer which appellant sought to have limited as testimony as to extraneous acts of misconduct.

The overruling of this objection to the court's charge does not reflect reversible error.

Ground of error No. 6 relates to appellant's objection XI to the court's charge on the ground that the charge as a whole did not limit the jury's consideration of State's Exhibit No. 1 (a letter by Aylesworth to appellant) to impeachment purposes only, but allowed the jury to consider the letter "as determining the guilt of this defendant or that he is a criminal generally."

Aylesworth was another teen-age boy who had been counseled by appellant. Graham, in his testimony, had referred to Aylesworth as having gone with him to appellant's apartment late in January when appellant attempted to kiss him (Graham) on the stomach to hypnotize him, after which the three went to the Pancake House and appellent bought their supper. Graham mentioned in his testimony that Aylesworth had gone to Mexico with him during Christmas week and later they went to Amarillo where they visited appellant and he took them to a drivein theater and to a bowling alley and bought them some rum and vodka which they drank. Graham also testified that appellant rode back to Plainview with them and "played around" with Aylesworth on the way. He also referred to appellant's having written to Aylesworth and Aylesworth to appellant in March 1966.

On his direct examination as a witness in his own behalf, appellant testified that he received a letter from Aylesworth who had left school and gone to Belen, New Mexico—

"He wrote me a letter and told me he was doing real well over there and playing basketball and on T.V. and this sort of thing and was doing real well."

Appellant further testified that the next time he heard, Aylesworth was in jail, charged with burglary.

When cross-examined as to Graham's testimony regarding the incident following which he bought Graham's and Aylesworth's supper, appellant answered that he heard Graham's statement "and I believe if you will check the records you will find that Aylesworth was in jail in New Mexico at the time." Asked if he did not "proposition" Aylesworth in January when he bought the boys' supper at the Pancake House, his answer was: "I did not buy their supper."

Referring to his good relationship with Aylesworth, appellant further testified on cross-examination: "I thought Aylesworth thought a lot of me, but he refused to abide by the school rules and promise to stay in school, so his mother sent him to Belen, New Mexico to live with an uncle."

"Q. Well, I was just stating that you told me a minute ago that he wrote you a letter from New Mexico.

A. From New Mexico, he did write one letter.

Q. And that one letter that he wrote you, I take it that if he hadn't thought something about you or thought you were a pretty good counselor, maybe he wouldn't have written to you.

A. Do you want me to answer that?

THE COURT: If you can answer it.

A. I got a letter from him, and he told me that he was very happy in the school there and was a good school and he was playing basketball and he was even on TV—basketball was broadcast on TV, and that he thought he was straightening out his life and was going to pass, for a change.

Q. I guess he wrote this letter from the standpoint that he wanted you to know what he was doing and wasn't that he thought that much of you as a counselor.

A. I believe he asked—probably so. I don't remember exactly the letter. And that his records be forwarded.

Q. What all did he say in the letter?

A. I couldn't tell you for sure, other than what I have said, sir.

Q. You said that he wrote you and told you that he was out there now and he was straightening out and he was doing—

A. He had been failing every subject at Plainview High School, and he said he was—at last, he was passing. He also had a little letter enclosed in the letter to give to a student named Pressey Sanchez.

Q. All I am trying to say is, he must have thought you were a pretty good friend, or he wouldn't have been writing to you.

A. I wouldn't know, sir. I guess that he did.

Q. Wasn't any type of thing to think at the time he wrote this letter to you that he was trying to frame you or anything like that, was there?

A. No, sir, I don't think he was framing me.

Q. When did he write this letter to you?

A. Shortly after he left. It was after mid-semester, be January 27, somewhere along in there.

Q. Where did he write the letter from?

A. I believe Belen, New Mexico, was the postmark. B-e-l-e-n. Thirty miles south of Albuquerque.

Q. The reason, I guess, to be writing a letter would be telling you that he had been out there and—

A. Mr. Thompson and Mr. Butler and his mother and I spent about two hours in Mr. Thompson's office with him, and he sat there and cried a little bit that day, and he was concerned. In the letter, he thanked me for his interest—the interest I had taken in him, yes, sir.

Q. That was the type of letter it was?

A. Yes, sir."

At this point State's Exhibit No. 1 was marked for identification and exhibited to appellant who denied that it was the letter he had received; and said that "the statements that are in the middle of that letter were not in the letter that he wrote to me."

Aylesworth appeared and testified as a rebuttal witness for the state. He corroborated the testimony of Graham as to appellant's attempt to kiss Graham on the stomach to hypnotize him, and their visit to the Pancake House where appellant bought their supper, and testified that on such occasion appellant asked him to spend the night and have homosexual relations with him and he refused.

State's Exhibit No. 1 was identified by Aylesworth as the letter he wrote to appellant. It was. also identified by the landlady as the letter she found in the apartment which appellant had just vacated, and it was admitted in evidence.

■ The trial judge did not err in failing to limit the State's Exhibit No. 1 to impeachment purposes only.

The letter, mailed February 14, 1966, is before us as State's Exhibit No. 1 in original form. It reads:

"Dear Mr. Johnston, First I want to thank you for all you did for .me. You made me realize things. I don't guess I'll ever forget you. Not because of what you did out of school or who you were out of school. But because you are interested in people. You know I'm glad that you never did anything to me. Because after you did other boys, you wanted someone new. And I believe you didn't want to do it but really wanted someone to love you. Take my advice and get women. I took yours. I'm still in school here in New Mexico, and I really love it. Got a new start * * * They televise all the games and it makes me feel proud to watch myself on television. My hair looks like a Beatle. It's blonde and real long. I didn't quit drinking but I guess no one can. Write me sometimes. To my favorite counselor. Warren."

"P.S. I enclose a letter and wish you would give it to a friend please—Pressey Sanchez—he's an 11th Grade—in Bixless' 4, 5, 6 Period Class. Thanks."

■ The letter written by Aylesworth was admissible not only to impeach the testimony of appellant but to corroborate the testimony of Graham and the other witnesses for the state, including Aylesworth, and to rebut appellant's defensive theories.

The remaining ground for reversal in appellant's brief attempts to group twenty in-formal bills of exceptions and complains that over proper objection of appellant the court permitted the district attorney "to go into a number of extraneous offenses without regard to whom they occurred with."

Art. 40.09 Vernon's Ann.C.C.P. requires that the defendant's brief "shall set forth separately each ground of error of which defendant desires to complain on appeal * * * ."

While the matters complained of in these informal bills are not presented as required by Sec. 9 of Art. 40.09, and the rule is one of evidence and not of constitutional right, the admissibility of the evidence as to extraneous offenses without limitation by the court in his charge is the most serious question in this appeal.

"As a general rule, in criminal cases the accused can be convicted, if at all, only by evidence that shows that he is guilty of the offense charged. Consequently, evidence that he has committed other crimes that are remote and wholly disconnected from the offense with which he is charged is ordinarily inadmissible."

23 Tex.Jur.2d 294, 295.

■ The rule against admitting evidence of other crimes by the accused is inapplicable if such evidence logically tends to show his guilt of the offense charged. In other words, relevant evidence that tends to prove that the accused committed the crime charged is not inadmissible simply because it may also reveal that he has committed other crimes.

■ Evidence of the commission of other crimes by the accused is admissible as exception to the general rule to show plan or system; to rebut some defensive theory and in cases such as sodomy, as evidencing the probability of the act charged and the unnatural attention toward the complaining witness, victim or accomplice.

Appellant's testimony was to the effect that Graham and other boys had been en-

gaging in homosexual activities with a man and that he counseled Graham not to go to the man's house again. He offered evidence to the effect that the reputation of Graham was that he was a troublemaker at school and his reputation for truth and veracity was bad.

Appellant testified that the act charged in the indictment did not occur. He denied the hypnotism and vibration routine shown by the testimony of the boys. He testified that he was not in his apartment at the time the state's testimony showed the offense was committed but was in Amarillo and he also raised as a defense that Graham had framed him and the boys were carrying out a threat to start rumors and accuse him of being "a homosexual," * * * "a damned queer," because he did not meet Graham's demand that he give him $100. All of such testimony of appellant was rebutted by the testimony of the boys denying that threats were made or money was demanded.

■ The testimony as to prior and subsequent acts of sodomy and other homosexual acts between appellant and Graham and between appellant and Caddell were admissible under our holding in Smith v. State, 170 Tex.Cr.R. 518, 342 S.W.2d 445, under the last exception set out above.

Such testimony, as well as the testimony and letter of Aylesworth and the testimony of Easley and Bowley was also admissible to prove system and to rebut appellant's defensive theory that he was the victim of a "frame-up," carrying out threats not to expose him as a homosexual but to start false rumors and falsely charge him with homosexual acts.

■ The failure of the trial judge to make any limitation upon the jury's consideration of the extraneous offenses shown by the state's evidence must be assessed in light of the several exceptions under which such evidence was admissible, and of Art. 36.20 C.C.P. which provides that a judgment will not be reversed for error in the charge unless such error was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial.

Apropos is the following comment by Judge Hawkins in Scott v. State, 95 Tex. Cr.R. 82, 252 S.W. 756, 757:

"It is contended by appellant that, if the testimony objected to was admissible, then the court should have limited it for the purpose for which it was admitted. Just how the court would have framed a charge suggested by appellant is difficult to conceive. The evidence was admissible, not upon one point, but upon many. It was usable for the purpose of rebutting the defense of alibi and as contradicting the witnesses who testified upon that issue; also to identify appellant and his companions, and as showing their association and conduct together during the night of the alleged robbery; also for the purpose of corroborating the prosecuting witnesses and showing the proximity of appellant and his companions to the scene of the robbery. For the court to have undertaken to limit this testimony, and at the same time to have prepared a charge not upon the weight of the evidence would have been a task which it appears counsel for appellant himself refrained from undertaking, as no special charge was requested upon this point."

Under the record we cannot say that appellant did not have a fair and impartial trial before the court and the jury.

The judgment is affirmed.

MORRISON, Judge, (concurring).

I concur in the affirmance of this conviction, but do not agree to be bound by the gratuitous portion of my brother Woodley's opinion in which he holds that a charge limiting the jury's consideration of the extraneous offenses is not necessary.