### TOM T. TANKERSLEY v. THE STATE.

#### No. 3641.   Decided November 21, 1906.

#### 1.—Theft of Cattle—Possession—Charge of Court.

Where in a prosecution for theft of cattle, the indictment charged possession in the first count in K., and in the secound count in W., and the trial judge certified in approving defendant's bill of exceptions that there was evidence that W. had the actual control and management of the animal alleged to have been stolen; and only submitted a charge based on the possession and ownership of K., there was error in not submitting a requested charge to acquit defendant if the possession was in W.

#### 2.—Same—Evidence—Check—Identity of Transaction.

Where upon trial for theft of cattle the defendant claimed to have purchased the animal, it was error to exclude a check offered in evidence by defendant in favor of the party from whom he claimed to have purchased, signed by defendant as agent of the party for whom he claimed to have purchased said animal, in the sum of $15 for work and one yearling, and not describing said animal; but which check was contemporaneous in date, or nearly so, with the alleged purchase; and which, in the light of other evidence in the case, was

admissible to reasonably identify itself with the transaction. Brooks, Judge, dissents.

**3.—Same—Charge of Court—Purchase—Defensive Issue.**

Where upon trial for theft of cattle the defendant claimed to have purchased the animal from one J., who claimed to have authority to handle the same from one O., the court erred in not charging on this phase of the evidence, as this issue was reasonably raised by the evidence.

**4.—Same—Defendant as a Witness—Charge of Court.**

Upon trial for theft of cattle the court correctly charged that a defendant in a criminal case is permitted by law to testify in his own behalf, but his failure to do so cannot be taken as a circumstance against him, and the jury must not discuss the question of his failure to testify when considering their verdict.

Appeal from the District Court of Fisher. Tried below before the Hon. H. R. Jones.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The indictment charged in the first count possession and ownership of the animal alleged to have been stolen in F. Keifer, and in the second count alleged possession of said animal in Joe Williams, and ownership in an unknown owner. The court submitted the case on the first count only.

The opinion states the case.

*Woodruff & Yantis,* for appellant.—On question of possession: Conner v. State, 24 Texas Crim. App., 245; Alexander v. State, id., 126; Otero v. State, 30 Texas Crim. App., 450; Swink v. State, 32 Texas Crim. Rep., 530. On question of purchase: Anderson v. State, 11 Texas Crim. App., 576; Smith v. State, 24 Texas Crim. App., 290; McDaniel v. State, id., 552.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of possession: Alford v. State, 31 Texas Crim. Rep., 299. On question of introduction of check and identity of property: Morrow v. State, 22 Texas Crim. App., 239.

BROOKS, JUDGE.—Appellant was convicted of theft of cattle, his punishment fixed at two years confinement in the penitentiary.

The substance of the testimony is that Joe Williams found a red-white-spotted yearling heifer branded either 5X or SX running in his pasture, the ownership of which was unknown to Williams. The yearling had been running in his pasture for sometime. On one occasion, Joe Williams pointed out said heifer to appellant, and asked appellant if he knew the owner of the animal. Appellant stated that he did not. A few days later, about October 9, 1905, appellant with Dolph Johnson came to the Williams' pasture to get some cattle Williams had sold appellant for Tom Polk, and while there Joe Williams asked appellant if he had learned the owner of the heifer. Dolph Johnson spoke up and claimed the right to take said heifer, and Wil-

liams claimed six months' pasturage for the same. Appellant gave
Williams a check for $1.50 as pasturage on the heifer for six months,
and appellant and Dolph Johnson drove the heifer off with the other
cattle appellant had purchased from Joe Williams for Tom Polk. The
heifer in question belonged to Dr. F. Keifer, who owned an adjoining
pasture to Joe Williams. Dr. Keifer testified not only to the owner-
ship of the animal in question, but that he placed said animal in his
own pasture and that it got into the pasture of Joe Williams. Wil-
liams never claimed the animal at any time, and it seems that his pos-
session was casual, incident to the fact that the heifer went through
the division fence between the Keifer pasture and his pasture.

Appellant requested the court to give a charge, to this effect: "If
the jury should find from the evidence that Joe Williams had posses-
sion of the cattle in question at the time the same was taken by
defendant, if taken at all by defendant, and that Joe Williams was
holding said cattle for pasturage, then and in that event, you will
acquit defendant." Appellant also asked the following charge: "If
you find from the evidence that Joe Williams had possession of the
cattle in question at the time the same was taken by the defendant,
if taken at all by the defendant, and that said Joe Williams was hold-
ing said cattle for pasturage, then and in that event you will acquit
the defendant." The learned trial court in approving the bill of ex-
ceptions to his refusal to give said charge, adds this explanation:
"There is no evidence that Joe Williams had the actual control and
management of the animal." We do not think there is any error in
the court's refusal to give these charges. If Williams had asserted
any character of control or management of the animal, or if the same
had been placed with said Williams in bailment, or if the said Wil-
liams had received said cattle from Keifer, the real owner, to pasture
for him, it would have been well and proper to have alleged the own-
ership in the said Williams. But here we have prosecuting witness
Keifer, who owned the animal, placing the same in his own pasture,
and was seen there at various and sundry times, and the animal had
slipped through the division fence and into the pasture of Williams.
We do not believe this constitutes special ownership on Williams' part
under the statute; and therefore, the court did not err in refusing the
charges above set out. Denton v. State, 5 Texas Ct. Rep., 446; Willis
v. State, 44 S. W. Rep., 826.

Appellant asked the court to give the following charge: "If you
believe from the evidence in this case that defendant purchased the
cattle alleged to have been stolen, or if you have a reasonable doubt as
to whether he purchased said cattle, you will acquit the defendant."
Neither appellant nor Dolph Johnson, from whom appellant insists
in his proof, that he purchased the cattle, testified. Nor does the
statement of facts show any facts authorizing this charge. It is true
Polk testified that he paid a check for $15, signed by appellant as his
agent, payable to Dolph Johnson, for work and one yearling. This

check was given several days after the animal was taken. The evidence is undisputed that appellant took the animal, and that Dolph Johnson assisted him in the taking. The mere fact that subsequent to the taking, he gave Dolph Johnson a check for work and one yearling, not proven to be the animal in question, would not raise the issue of purchase.

Appellant's third complaint is that the court erred in refusing to permit appellant to introduce the check drawn by him in favor of C. L. Johnson, commonly known as Dolph Johnson, on the First National Bank of Roby, for $15, of date October 13, 1906, given in payment of one yearling and for work. This check would have been admissible as corroborative testimony of the fact that he had purchased the animal, if there had been any distinct positive evidence that he had done so. But the check is in no way identified as being the check for the animal in question.

The fourth complaint is that the court should have charged the jury: "If from the evidence you believe that Dolph Johnson claimed to have authority to handle the cattle in question from one Oat Osborn, and under said claim or authority, drove and shipped the said cattle with one Polk's cattle, or if you have a reasonable doubt as to whether said Johnson took and shipped said cattle in question, you will acquit the defendant." We do not think the evidence raised this issue. Appellant paid the pasturage to Williams for the yearling in question, claiming it for the party who had authorized him to take charge of the animal. The mere fact that Dolph Johnson was present and assisted in taking the animal away would not make appellant less guilty.

Appellant objects to the following portion of the charge: "Defendant in a criminal case is permitted by law to testify in his own behalf, but his failure to do so cannot be taken as a circumstance against him, and the jury must not discuss the question of his failure to testify when considering of your verdict." This charge has been repeatedly approved by this court and is the statute.

The last insistence of appellant is that the evidence is not sufficient to support the verdict. We cannot agree with this contention. The circumstances clearly show that appellant knew he was committing theft at the time of the taking. His subsequent acts in paying prosecuting witness for the animal corroborate this. Finding no error in the record, the judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

April 10, 1907.

HENDERSON, JUDGE.—This case was affirmed at a former term of this court, and now comes before us on motion for rehearing. In the original opinion we held that in view of the explanation of the court, in which we interpolated the word "no" and from the testi-

mony the court was not required to charge on possession by Joe Williams, but it appears we were in error as to the interpolation of the word "no"; that the court's approval of said bill has the following explanation: "There is evidence in this case that Joe Williams had the actual control, care and management of the animal." If this be true, then unquestionably the court should have given the charge in favor of defendant as to the possession by Joe Williams. The record, we believed in the original opinion, was sufficient to have authorized the court to refuse the special requested instruction, especially in view of the court's explanation, to which we interpolated the word "no" but it occurs to us inasmuch as it is a nice question from the record as to whether or not the court was required to give the requested charge, in view of the explanation given by the court, that said requested charge should have been given.

We also held in the original opinion that the check which was offered by appellant in evidence was not admissible. This check was in favor of C. L. Johnson commonly known as Dolph Johnson, on the First National Bank of Roby, for $15, of date October 13, 1906, given in payment of one yearling and for work. We held in that opinion that there was no distinct evidence that the check was for the identical yearling which appellant is charged to have stolen. The State urgently contends in contesting the motion for rehearing that there was no error in our original holding. It is true, as contended for, that before an instrument of writing, such as a check, can be introduced in evidence, that it must reasonably identify itself with the transaction. This check was, it seems, of a date cotemporaneous, or nearly so, with the alleged purchase of the animal by appellant from Dolph Johnson, as claimed by him. There is also evidence that Johnson was working for appellant at the time and that during said time Johnson was claiming the right to sell the yearling in question, and there is no evidence of a purchase by appellant at or about said time of any other yearling from Johnson. We believe, on reconsideration of this matter, that the rejection of this check on the part of the court was error. Of course, if there was testimony of an absolute purchase of the animal in question outside of the check itself, there would have been no necessity for the introduction of the check, but the check, under the circumstances which environ it in this record, we think, was a fact that appellant was entitled to as tending to show his purchase of the animal from Dolph Johnson; nor in our opinion does it matter that there may have been a witness present who might have further identified the check in question with the transaction. Appellant may have had his reasons for not placing said witness on the stand. The fact that he did not would not authorize the court to reject evidence where, as we believe in this case, the circumstances were sufficient as tending to identify the check with the transaction in question.

We note in the former opinion we held that the court was not required to charge on purchase by appellant of the animal in question

from Dolph Johnson, and further that the court was not required to charge specially as requested by appellant as to the authority of Dolph Johnson to handle the animal in question from one Oat Osborn. We have examined the record more carefully on these points, and we believe we were in error in holding that these requested charges were not required. The general rule is, where there is testimony tending to establish a defensive issue, it is not necessary that it be strong, but, if it reasonably raises the issue of purchase where the charge is theft, it is the duty of the court to instruct the jury on that phase of the case.

We find from the record this character of testimony: that E. A. Davis questioned Dolph Johnson's right to take the animal in question, and that Johnson stated that the heifer belonged to a man that was passing through with a bunch of cattle and that this heifer had dropped out and lodged in this pasture, to wit: The Williams' pasture, and that he had given him authority to ship her and make the returns to him, and that the man's name was Oat Osborn. This witness states that appellant was not present at the time Davis and Johnson drove the heifer with other cattle from the Davis' pens across his pasture and down the public road and met appellant on Plum Creek. And the witness Keifer also testified that Joe Williams, who gave him the information as to who got the animal in question, stated to him at the time that Dolph Johnson claimed the heifer for Oat Osborn, and said he would take the heifer along with the other cattle and sell her and send him the money. Davis also testified that Dolph Johnson was working for Tom Polk the 9th, 10th and 11th of October, 1905, and that on the 13th appellant gave a check to Dolph Johnson drawn on Polk for $15 for work and one yearling and $1.50 pasturage. The animal in question was shipped with Polk's cattle, and when they were weighed, appellant remarked, "Weigh the little spotted heifer separately." Now, in the absence of any positive evidence in the record showing that appellant was present at Joe Williams' pasture when the animal was driven therefrom on the night of October 9, 1905, and put in the Davis' pens with other cattle, but that his connection therewith depends on circumstances, it would appear that this testimony together with other facts in the record would certainly tend to show that Dolph Johnson put up a claim to this head of cattle through the authority of Oat Osborn, and that there was enough in the evidence to show that appellant claimed to purchase the animal from Dolph Johnson. True, there may be testimony in the record strongly contesting this claim on the part of the State, and circumstances tending to show that appellant's claim of purchase from Dolph Johnson was a pretext, and that Johnson's claim to have authority from one Oat Osborn to handle cattle was also a pretext, yet the testimony tending to show this claim of purchase by appellant from Dolph Johnson was sufficient, in our opinion, to have required of the court a charge presenting these issues on behalf of appellant to the jury in

order that appellant's claim might be passed upon by them; certainly the testimony referred to above of Davis suggests this phase of the case; he testifies that Dolph Johnson, on the way, after he had left the Joe Williams' pasture with the cattle in question, when asked by him what he was doing with Dr. Keifer's heifer, said it was Oat Osborn's heifer; that he Oat Osborn had authorized him Dolph John-·son to sell same and turn the money into him Osborn. This conversation occurred when the cattle were being taken to Eskota, and from thence the animal and others were taken to Fort Worth, which was on the 11th or 12th of October, 1905, and on the following day, October 13th, the check heretofore alluded to was given by appellant to Dolph Johnson for the work and yearling. We believe on a careful review of the record that we were in error heretofore in holding that the charges in question were properly refused by the court. The court gave no charges on the subject, and these requested charges covered issues raised in the case by the testimony.

The motion for rehearing is accordingly granted, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, dissents.