LEE HOWELL V. THE STATE.

No. 18943. Delivered April 7, 1937.
State's Rehearing Granted May 26, 1937.
Appellant's Rehearing Granted November 10, 1937.

The opinion states the case.

*Glover Engledow,* of Jayton and *J. B. Engledow,* of Thornton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of theft of property over the value of fifty dollars, and his punishment was assessed at confinement in the state penitentiary for a term of three years.

Appellant challenges the sufficiency of the testimony to support his conviction on the theory that the law will not permit a conviction of one accused of crime upon the testimony of an accomplice unless the same is corroborated and such corroboration must in and of itself tend to connect the accused with the crime which he is charged with having committed. Recognizing the soundness of the proposition advanced we deem it necessary to review the salient facts and circumstances proven at the trial to determine whether or not the accomplice, who made a complete case of theft against the appellant, has been sufficiently corroborated. On the night of June 4th, three bales of cotton were taken from the yard of the Farmers Gin Company in the town of Rotan and carried in appellant's truck to the town of Snyder where the accomplice offered them for sale, when he was arrested. About the time the officers undertook to arrest Guerin, the accomplice, they noticed a stranger standing on the street near the bank who in appearance resembled the appellant and who the officers testified in their best judgment was the appellant. After they had arrested the accomplice one of the officers took charge of the truck while the other placed Guerin in jail. Thereafter they began to look for the stranger who they had seen on the street, but he had disappeared. About the time the alleged offense was committed appellant was away from home and the community in which he lived for several days. Appellant subsequently transferred the truck which the officers had taken possession of to Billie Lee of Snyder, Texas. Three persons, who were employed by the State Highway Department and were at work on the highway, testified that they saw appellant and accomplice riding in appellant's truck on the 4th day of June going in the direction of Rotan. We think that the accomplice was sufficiently corroborated by the facts and circumstances proven as hereinabove stated.

Appellant's next contention is that the court erred in not instructing the jury that if they found from the evidence or had a reasonable doubt thereof that C. C. Roach had the actual con-

trol, care, and management of the cotton described in the indictment, then to acquit the defendant. The court failed to heed the objection and failed to submit such an instruction to the jury. We think that in this respect the trial court fell into error. The indictment in the first count thereof charged that the defendant on or about the 5th day of June, 1936, and anterior to the presentment of the indictment in the County of Fisher and State, aforesaid, did unlawfully and fraudulently take three bales of lint cotton of the value of one hundred and fifty dollars, the same then and there being the corporeal personal property of and belonging to Arthur Singley, from the possession of Arthur Singley, without the consent of Arthur Singley, etc. In the second count it was charged that Lee Howell did then and there unlawfully and fraudulently take three bales of lint cotton of the value of one hundred and fifty dollars, the same then and there being the corporeal personal property of and belonging to C. C. Roach, from the possession of said C. C. Roach, etc. Mr. Singley testified: "On or about the 5th day of June, 1936, I had some cotton stored at Rotan. It was in the yard of the public weigher. * * * I lost those three bales of cotton. It was later found at Snyder, Texas. Mr. Roach handled the weights and sale of the cotton. As to whether the cotton was in his care and custody, I do not know how it was handled in the Yard of the Public Weigher's. Mr. Roach is the manager of the gin there; that is the Rotan Gin. That is a farmer-owned gin. He had authority to sell it for me."

C. C. Roach testified: "I am manager of the Rotan Gin Company. That is the farmer gin at Rotan. On the 5th day of June, 1936, I had in my care and custody and control, three bales of cotton belonging to Arthur Singley. The way that cotton came into my care and custody, it had been ginned at our gin. I marked those three bales of cotton. I had authority from Mr. Singley to do that. I sold that cotton for nine cents or a little over after they were recovered at Snyder, Texas. I did not give the defendant or anyone else my consent or permission to take that cotton away from that yard."

The court submitted the case to the jury on the first count in the indictment which charged the ownership and possession of the property at the time it was taken to be in Arthur Singley and instructed the jury as to such ownership and possession alone. Appellant's contention is that the evidence shows the ownership in Singley and the care, control, and management of the property at the time it was taken to be in C. C. Roach, and,

therefore, the court should have submitted this issue to the jury. We are constrained to agree with him. The allegation of possession of the alleged stolen property, being descriptive and essential, must be proved as charged and where the testimony raises an issue as to the ownership of the alleged stolen property the court should instruct the jury on the law of such issue. See White v. State, 33 Texas Crim. Rep., 95; Tankersley v. State, 51 Texas Crim. Rep., 224; Bailey v. State, 50 Texas Crim. Rep., 399, and many other cases might be cited.

The testimony as to when Singley authorized Roach to sell the cotton, whether before or after it was stolen, is rather uncertain and might be definitely shown upon another trial.

For the error hereinabove discussed the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—This case was reversed on the ground that the testimony not only supported the averment of ownership in Singley, but also supported an averment of ownership in Roach, and that the latter question should have been submitted to the jury. In the light of the State's motion for rehearing we have again reviewed the facts, and deem same to sufficiently show that the property alleged to have been stolen was at the time in the care, management and control of Singley, the general owner thereof, and that it was not necessary to submit the second count. To make plain this fact it becomes necessary to state the testimony on the point of ownership of the stolen cotton. Singley testified that he took three bales of cotton to the Rotan Gin Company, of which Mr. Roach was manager. We quote Singley's testimony:

"I just ginned my cotton at the gin and then carried it down to the public cotton yard, and got a receipt for it, and left it there. Either Mr. Roach or Louie Miller signed the receipt. Louie Miller had been the weigher, but I am not sure that he was taking care of it right then. I would say I put that cotton in there, somewhere in January. Neither Mr. Miller nor Mr. Roach ever came to me and got my consent for the cotton weigher to resign and turn it over to Mr. Roach, or anything like that."

Mr. Roach testified:

"I am manager of the Rotan Gin Company. * * * In that capacity on or about the 5th of June, 1936, I had in my care and custody and control three bales of cotton belonging to Arthur Singley. The way that cotton came into my care and custody, it had been ginned at our gin. * * * I ginned for Arthur Singley three bales of cotton in the 1935 ginning season. * * * I was not the public weigher at that time. We did own that yard where the cotton was. I was not the cotton weigher in 1935."

There were two counts in the indictment, one charging theft of three bales of cotton from Singley, without his consent, etc.; the other charging theft of three bales of cotton from Roach, without his consent, etc. The court only submitted count one, evidently concluding there was not testimony to support the averment of ownership in Roach. We have concluded that the action of the trial judge was correct. While Mr. Roach affirmed that he had the cotton in his care, custody and control, still in the next breath he explained that his such statement was based solely on the fact that he had ginned the cotton for Mr. Singley, —which explanation removed from this case the issue as to his special ownership of said cotton. We regard the facts as showing without dispute that after the cotton was ginned Singley, the owner, took same into his manual possession, and then stored it with the public cotton weigher, Mr. Miller, from whom he took a receipt. The fact that thereafter Miller resigned would not vest special ownership in Mr. Roach, as we understand the record, but the care, control and management of the cotton would revert to the general owner, Mr. Singley, and this would call for and justify the court's charge of theft from Singley as owner.

Appellant urges that the evidence is not sufficient to support the conviction. We have carefully reviewed the testimony of all the witnesses, and find ourselves unable to agree with appellant's contention. Without going into the testimony of each witness, there is evidence showing that appellant lived at Jayton, some miles from Clairemont, the county seat of Kent County, Texas, where Geurin lived. Appellant worked at a gin in Jayton, and in a box at the gin there were a number of cotton tickets, some of which disappeared about the time of this theft. Geurin testified that appellant had approached him with the proposition out of which he said they could make some money, viz: that they should steal cotton and sell it. Appellant owned a truck. A number of witnesses testified that on the morning of June 4th they saw appellant with Geurin in Claire-

mont, and that both men got into appellant's truck and left. They were seen together on the highway by three witnesses, and were at the time headed towards Rotan. Geurin testified that they went to a number of towns together that day and during the night, and that at about ten or eleven o'clock that night they went to the Farmers' Gin at Rotan and loaded on three bales of cotton, which they took over to Snyder. They had cotton hooks, and on the way to Snyder they stopped and appellant changed the cotton tags on the bales of cotton, and when they got to Snyder they unloaded the cotton from the truck at a cotton yard. Geurin said he then hunted up the cotton weigher and had the cotton weighed, and took samples of it and went up town to sell it, and was soon after arrested. He said appellant had no samples but was around on the streets. Witnesses testified to the appearances of Geurin and how he was dressed, and that there was another man whom they were watching at the same time who was dressed in overralls that matched those appellant was said to be wearing. This man disappeared about the time Geurin was arrested. A deputy sheriff testified that he was informed about the possession of suspicious cotton and was watching two men, one of whom had the cotton samples, and the other of whom was standing around, both of whom were strangers. This officer said he knew everybody in Snyder and the farmers all around, and that he arrested the man with the cotton samples and the other disappeared. As above stated, he said that in his best judgment the man who disappeared was this appellant. The officer said he took charge of the truck on the streets of Snyder, which had some cotton hooks in it and various other articles. He put this truck in a garage and took a ticket for it. Without going into details this truck was shown by testimony to belong to this appellant. Appellant took the witness stand and testified he was at Clairemont on the morning of June 4th, and left there with Geurin, and that they went together to Sweetwater, and that he went from Sweetwater down to Coleman County, and that he was not in Snyder. Appellant admitted that the truck taken in charge at Snyder by officer Bruton on the morning of the 5th of June was his truck, and that he had transferred it to a cotton buyer in Snyder by the name of Lee, who testified to the same facts. We are not able to agree with appellant's contention that the evidence is not sufficient to support the judgment. Geurin swore positively to a complete case against appellant. Geurin was an accomplice, but was sufficiently corroborated.

The State's motion for rehearing is granted, the judgment of reversal is set aside, and the judgment of the trial court is now affirmed.

## ON APPELLANT'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—The judgment of conviction was reversed in an opinion of date April 7, 1937. The State's motion for rehearing was granted, the judgment of reversal set aside and the judgment of conviction affirmed in an opinion of date May 26th, 1937. Appellant now files a motion for rehearing in which he urges that this court was in error in the disposition of the questions considered in the former opinions. We do not feel called upon to discuss these questions further.

Appellant in his motion calls attention to this bill of exception number two which was not adverted to in either the opinion of reversal or affirmance. The fact that same was overlooked may be accounted for by the circumstance that said bill was omitted from the original transcript and was brought forward in a supplemental transcript and in that way it escaped attention. The bill in question relates to the impeachment of State's witness Guerin. The conviction depended almost entirely upon Guerin's testimony. He was by far the State's most important witness, without whose testimony the State could not have made even a meager case against appellant. While Guerin was an accomplice witness it is apparent that the jury was necessarily forced to rely upon the truthfulness of his testimony. Said bill relates at length the evidence which had been given by said witness showing its importance, and then recites that J. D. Earnest, the County Judge, of Kent County, testified that he had known Guerin about four years, knew his general reputation in the community where he resided for truth and veracity, and that such reputation was bad. He was then asked if Guerin's reputation in that respect was such "as to entitle him to belief under oath." The District Attorney objected on the ground that he "believed it was going a little too far, and that he did not think any human being could answer that question." The objection was sustained. The bill recites that if permitted to answer Earnest would have testified that the reputation of Guerin for truth and veracity was such as not to entitle him to belief under oath.

The last time this court was called upon to discuss the question at length was in Latham v. State, 117 Texas Crim. Rep., 226, 33 S. W. (2d) 441, in which the court, speaking through Judge Martin, then one of our Commissioners, said:

"It is held in an unbroken line of authorities, extending back to our earlier judicial history, that a witness who has properly qualified and answered that the general reputation of a witness for truth is bad may further be asked whether that 'general reputation is such as to entitle the witness to credit on oath.' Marshall v. State, 5 Texas App., 273, 294, quoting Boon v. Weathered, 23 Texas, 657. See, also, on same subject, Holbert v. State, 9 Texas App., 221, 35 Am. Rep., 738; Bluitt v. State, 12 Texas App., 39, 41 Am. Rep., 666; Ware v. State, 36 Texas Crim. Rep., 597, 38 S. W., 198; Clemens v. State, 81 Texas Crim. Rep., 113, 193 S. W., 1066; Robertson v. State, 104 Texas Crim. Rep., 89, 282 S. W., 587; Moody v. State, 90 Texas Crim. Rep., 529, 236 S. W., 740."

Later in the same opinion appears the following:

"The reasoning of some of the cases which contain the principle here announced is that the mere presence of proof that a witness' reputation is bad leaves the jury without an exact guide as to the extent to which his testimony should be discredited, whereas precise proof that it is such as not to entitle him to belief under oath furnishes the jury an exact rule of measurement for their guidance. Without pausing here to analyze its correctness, suffice it to say that such a rule has been too long a part of our law to now disturb and unsettle it by criticism."

In Branch's Ann. Tex. P. C., Sec. 184, page 116, is found a text in line with the first quotation from Latham's case, with citation of some of the same authorities and also additional ones. The same rule will be found in Sec. 266, page 136, 45th Tex. Jur., with citation of numerous authorities under Notes 15 and 16.

The State's reliance upon Guerin's testimony in the present case was so imperative that we are forced to the conclusion that the rejection of the evidence complained of was such error as demands reversal. We regret having overlooked said bill heretofore.

The motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment of conviction is now reversed and the cause remanded for the error appearing in bill number two.

*Reversed and remanded.*