**Eliseo MELENDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 808–95.

Court of Criminal Appeals of Texas, En Banc.

Dec. 18, 1996.

Floyd W. Freed, III, Houston, for appellant.

Dan McCrory, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

This cause involves, among other prosy inquiries, where in a complete appellate record would one reasonably familiar with Texas Rules of Appellate Procedure ("TRAP") expect to find admitted exhibits (other than physical evidence): transcript or statement of facts? TRAP 50(a). More to the point, we granted the State's sole ground for review in terms of whether the court of appeals erred in concluding that appellant is entitled to a new trial under TRAP 50(e).[1]

A host of adverse decisions rejecting attempted appeals makes painfully evident that a rational process for timely perfecting a statement of facts and filing the same has troubled, if not eluded, legislators and more importantly the bench and bar ever since the first scheme was devised. We have found it helpful to examine this problem in its historical context, and to that end we set out in the margin a summary explication of evolutionary developments informing the Court in creating our present rules.[2]

---

1. Several months later the State presented a "supplemental" PDR in which it advanced a "supplemental reason for review" to the effect that a contemporaneous opinion of another appellate court in *Gomez v. State,* 905 S.W.2d 735 (Tex.App.—Houston [14th] 1995) PDR granted January 24, 1986, is in "direct conflict with the holding in the instant case." PDR, at 2.

Thereafter in its Brief on the Merits the State gratuitously suggests a second ground for review, *viz:*
"The court of appeals erred in refusing to allow the substitution of the missing portion of the record, over appellant's objection, as authorized by Tex.R.App.P. 50(e)."
Brief, at 5. We decline to address a ground for review that has not been previously raised and presented for consideration in the PDR. We will, however, notice the *Gomez* opinion as it relates to issues properly before the Court, reserving judgment on the merits of the ground for review in that cause.

2. The vocabulary most often used in the cases may be traced back to the time when only civil statutes provided the process for preparing and filing a statement of facts in criminal cases as well. See Act of March 8, 1887, Gen. Laws, p. 17; 9 Gammel's Laws 815, adding article 1379a, Revised Civil Statutes (1879); *George v. State,* 25 Tex.App. 229, 8 S.W. 25 (1888) (to file statement of facts beyond prescribed day party must show "due diligence" to obtain *approval and signature of judge* thereto, and failure timely to file not due to "fault or laches" of party, but to result of causes beyond party's control); *accord: Spencer v. State,* 25 Tex.App. 585, 8 S.W. 648 (1888).

See also article 1382, R.C.S. (1895) to the same effect.

Thereafter, presumably to effectuate valid policy considerations relating to appeals in criminal cases, the Legislature dramatically changed the scenario and perforce the vocabulary. Acts 1909, 31st Leg., Ch.39, p. 376, § 7, codified as articles 844[824], 845 & 846, C.C.P. (1911) (failure to move for new trial no bar to appeal, defendant entitled to statement facts; judge may extend prescribed time to file statement for *"good cause shown;"* duty of court reporter to prepare, and judge must appoint counsel for indigent defendant and order statement of facts). See, e.g., *Pace v. State,* 58 Tex.Cr.R. 90, 124 S.W. 949, at 950 (1910).

Nonetheless, early on the Court virtually ignored prescribed legislative vocabulary, i.e., for "good cause shown." Instead, it reprised the mantra of prior cases, and from the facts determined whether an defendant was "without fault." *Roberts v. State,* 62 Tex.Cr.R. 7, 136 S.W. 483, at 484–485 (1911); cf. *Couturie v. Crespi,* 103 Tex. 554, 131 S.W. 403 (1910). See also *Vickers v. State,* 90 Tex.Cr.R. 609, 236 S.W. 483 (Tex.Cr.App.1922) (fault chargeable to defendant).

Even after article 760, C.C.P. (1925) incorporated provisions of former articles 844, 845 and 846, thereby continuing the "good cause" test, the Court seemed to avoid gauging claims by that measure, and when it did the claim was subjected to strict critical scrutiny. See, e.g., *Weaver v. State,* 106 Tex.Cr.R. 175, 291 S.W. 240, at 242 (1927) (no showing why court reporter did not prepare statement of facts *prior* to alleged illness); *Davis v. State,* 108 Tex.Cr.R. 272, 300 S.W. 940 (1927) (despite claim of court reporter

It was against that background that the Court along with the Supreme Court formulated, adopted and promulgated the TRAP rules, effective September 1, 1986. In the doing, we abandoned, modified and revised many aspects and requirements in the former rules and statutes, created and established some new rules, and repealed all affected statutes.

being delayed on account of eye trouble and illness, statement of facts was approved seven days before deadline, and no showing why not then timely filed); but see *Bush v. State*, 127 Tex.Cr.R. 549, 78 S.W.2d 625 (1935) (defendant improperly denied statement of facts prepared but not delivered to him because he claimed inability to pay for it). More often the Court adhered to the statutory formulation on the civil side. See, e.g., *Little v. State*, 131 Tex.Cr.R. 164, 97 S.W.2d 479 (1936) (defendant diligently requested statement of facts; court reporter died before transcribing notes; proposed substitute unacceptable; defendant without fault); *Lamkin v. State*, 138 Tex.Cr.R. 311, 136 S.W.2d 225, at 226 & 228 (1940) (diligent attempt to obtain statement of facts from former trial and conviction with suspended sentence foiled by prior destruction of reporter's notes); *Young v. State*, 146 Tex.Cr.R. 220, 172 S.W.2d 500 (1943) (where within time allowed for preparing, approving and filing statement of facts both counsel for State and defendant were called into armed forces, not unreasonable to presume difficulty in agreeing upon same; viewed from his standpoint the latter party "unjustly deprived" of record on appeal); *Hartgraves v. State*, 374 S.W.2d 888, at 889–890 (Tex.Cr.App.1964) (because counsel tendered to county attorney and trial judge a statement of facts which they arbitrarily refused to approve, defendant deprived of statement without any fault of his own or of counsel).

In 1965, from recommendations made after literally years of studious effort by members of a special committee of the State Bar, coupled with a referendum in support, the Legislature finally enacted a revised code of criminal procedure. Acts 1965, 59th Leg., vol 2, Ch. 722, p. 317; see Introduction, 1 Vernon XV (1977). The committee touted "simplification of appellate procedure" reflected in article 40.09 as "one of the greatest contributions of the new Code." *Id.*, at XXII. In their respective commentaries, two sitting judges of this Court hailed conveniences and improvements, "eliminat[ing] many of the technicalities that mar existing practice." Commentaries following article 40.09, 5 Vernon 205 (1977).

Paragraph 5 of former article 40.09 placed upon the "desiring party" responsibility for obtaining "a transcription of notes of the reporter ... and furnishing same to the clerk in duplicate in time for inclusion in the record[.]" The time for filing prescribed in paragraph 3 could be extended *"for good cause shown"* upon timely application to this Court in accordance with former rule 6 of posttrial and appellate procedural rules. Paragraph 7 required the trial judge to approve the record within a specified time unless either party filed an objection, in which event the judge was to convene a hearing and then enter such orders as "to cause the record to speak the truth." *Ibid.* Cf. TRAP 55(a).

The Texas Constitution was amended in 1980 to revamp our appellate and review system; concomitantly the Legislature amended the code of criminal procedure to implement those dictates. Acts 1981, 67th Leg., Ch. 291, p. 769, at 801 ff. Actually, the changes made in appellate procedures now under consideration are of little or no immediate consequence here. See C.E.F. Dally & P.A. Brockway, *Changes in Appellate Procedure in Criminal Cases Following the 1980 Constitutional Amendment*, 13 St. Mary's L.J. 211, 222–226 (1981).

Under the aegis of original and amended article 40.09 initially the Court looked for compliance with technical provisions pertaining to the statement of facts; as was its wont, the Court eschewed the "good cause" test, except when determining motions for extensions of time. See pertinent annotations summarizing relevant cases. In latter days, however, the Court resorted instead to variations on nonstatutory rote of choice.

For example, in *Timmons v. State*, 586 S.W.2d 509 (Tex.Cr.App.1979), on this question we wrote:

"... To be entitled to a reversal of judgment of conviction where the statement of facts is not filed, an appellant must show *due diligence in requesting it* and that *failure to file it* or have the statement of facts timely filed is not due to ... *fault* on the part of appellant and his counsel. (Citations omitted)."

*Id.*, at 512. See also *Gamble v. State*, 590 S.W.2d 507, at 508–509 (Tex.Cr.App.1979) (quoting *Timmons*, supra, and pointing out that "harm or prejudice [need not] be alleged to mandate reversal"); *Austell v. State*, 638 S.W.2d 888, at 890 (Tex.Cr.App.1982) (citing and following *Gamble v. State*, supra); *Harris v. State*, 790 S.W.2d 568, at 574 (Tex.Cr.App.1989) (rule in *Austell, et al.*, reviewed approvingly but distinguished on facts); *Payne v. State*, 802 S.W.2d 686, at 688–689 (1990) (essentially following authorities under article 44.09 previously discussed and cited above).

However, where defendant is found indigent special considerations mandate that the statement of facts be prepared as requested, and such a putative appellant need not establish harm to be entitled to entire statement. *McGee v. State*, 711 S.W.2d 257, at 258–259 (Tex.Cr.App.1986).

Recorded in rather summary fashion, we come to the end of an account of the evolutionary development of former rules under which defendant might show entitlement to a new trial for want of a statement of facts. (All emphasis above and throughout is supplied by the writer of this opinion unless otherwise indicated.)

For examples, clerk of court is responsible for preparation of transcript, court reporter for the statement of facts, TRAP 51(c) & 53(a) & (b), respectively; no longer are the opposing party and the trial judge required to approve the statement of facts, TRAP 53(f); once filed in the appellate court, inaccuracies, omissions and defects in the record may be efficiently and expeditiously remedied, TRAP 55. And, particularly germane here, after bringing forward the last sentence in former article 44.11 (substitution of record), we added the second sentence in TRAP 50(e) (new trial where notes and records of court reporter are lost or destroyed).

## I

### A

The court of appeals determined that exhibits are part of the statement of facts, so the latter is not complete without the former, and an appellate court cannot review sufficiency of evidence without a complete statement of facts. Considering that three of eight exhibits admitted in the guilt stage were missing from the statement of facts, at least one of which was deemed "crucial," that the State sought to substitute affidavits from trial attorneys for two exhibits but appellant opposed the substitution, in accordance with TRAP 50(e) the court of appeals reversed the judgment below and remanded the cause for a new trial. *Melendez .v. State,* 902 S.W.2d 28, 30 (Tex.App.—Houston [1st] 1995).

### B

The State questions the threshold determination concerning the proper status of exhibits, advancing essentially a recent split decision in *Gomez v. State,* 905 S.W.2d 735 (Tex. App.—Houston [14th] 1995), PDR granted. It also contends that appellant failed to demonstrate "due diligence" to secure a complete statement of facts, relying primarily on *Culton . v. State,* 852 S.W.2d 512 (Tex.Cr.App. 1993). We address each matter in turn.

## II

### A

Under former article 40.09, paragraph 1, V.A.C.C.P., there was but one "appellate record," and the Court had no doubt that "[e]xibits are part of the appellate record which *shall* be included, *whether designated or not." Durrough v. State,* 693 S.W.2d 404 (Tex.Cr.App.1985).[3] It is noteworthy that former article 40.09, paragraph 1, expressly directed the *clerk* of the trial court to include in the record, *"whether designated or not ... copies of all exhibits on file,* other than physical exhibits or [certain described] documents[.]" See West's Texas Code of Criminal Procedure (Pamphlet 1985 Ed.). However, that article was repealed by promulgation of TRAP rules which modified the process.

*Then* there was a single integrated "appellate record" that along with mandated and requested papers and other germane materials *"may* include a transcription of all or any part of the *proceedings* shown by *notes of the reporter."* Former article 40.09, paragraphs 2, 3 and 4. *Now* there is a record on appeal consisting of two separate parts, *i.e.,* transcript and statement of facts. TRAP 50(a). No longer does a statute or rule impose upon the *clerk of court* a responsibility to include admitted exhibits in the *transcript.* Compare TRAP 51; see TRAP 53. The clerk must prepare the transcript in the form directed by this Court, and immediately transmit it to the appellate court without regard for condition of the statement of facts, if any. TRAP 51(c). The court reporter prepares and certifies the latter; the appellant causes the statement of facts to be filed with the *appellate* clerk; a duplicate is filed with the trial clerk. TRAP 53(f), 53(k) & 53(*l*).

### B

When requested to do so, the court reporter is duty bound to attend sessions of court and make "a full record of the evidence;" later, to file "all exhibits with the clerk."

---

**3.** The record reflected that certain omitted exhibits were part of the appellate record prepared below but for reasons unknown had not been "physically" included in the record sent to the court of appeals; Durrough obtained and tendered them to the appellate court. Given those circumstances this Court granted the PDR and remanded the cause to that court of appeals for reconsideration of the related ground of error *"including the omitted exhibits." Ibid.*

TRAP 11(a)(1) & (3). In that connection, conventional practice is for the offering party to have the court reporter "mark" an exhibit for identification, a witness identify it and, after receiving a ruling admitting the exhibit and using it as evidence, ultimately to return it to the court reporter to become part of the "record of the evidence." Then whenever safe-keeping interests are best served, the court reporter files all exhibits received in evidence with the clerk of court. *Ibid.*

### 1

Generally the party desiring to appeal must timely make a written request to the official court reporter, designating portions of the evidence to be included therein. TRAP 53(a). However, where the defendant properly claims and the trial judge determines that party is unable to pay or give security for preparation of the statement of facts, the court shall order the court reporter to furnish the same. TRAP 53(j)(2); *Dunn v. State*, 733 S.W.2d 212, at 213–214 and n. 3 (Tex.Cr.App.1987); 1 Branch's Annotated Penal Code (2nd Ed) § 617, at 593 (collating cases).[4] When a complete statement of facts is requested or ordered the court reporter is duty bound to ensure the statement of facts contains a bobbed copy (or written description for "physical" material) of each exhibit admitted as evidence. TRAP 11(a)(4); TRAP 53(c) (formal parts shall be excluded or abridged).

As with the transcript, this Court is authorized to make orders "directing the form of the statement of facts and the court reporter

will prepare the same in conformity therewith." TRAP 53(h). The Court has done so, and its order has been in effect since September 1, 1986. Appendix for Criminal Cases, Texas Rules of Appellate Procedure, West's Texas Statutes and Codes (Pamphlet 1996) 473. Actually, the order is patterned on Rule 201 of former Rules of Post–Trial and Appellate Procedure in Criminal Cases, effective September 1, 1981. See Vol. 617–618 Southwestern Reporter (Texas Cases) xxxvii ff (1981).

Regarding the statement of facts, Appendix Rule 1(b)(4) provides:

"The court reporter shall also show in a separate table in the first volume of the statement of facts the page at which any *exhibit* or other document *copied therein* appears, and the pages at which it is identified ... offered, marked, received, and *shown.* The table of exhibits may be as shown in the following example or in any other form which shows the same information. (example omitted)."

Rule (1)(b)(5) contemplates that neither *"physical evidence"* nor an *original exhibit* is to be included in the record. Instead each item of physical evidence "must be described alone on a separate piece of paper;" then it and *a legible copy of other exhibits* must appear respectively on a separate page of the statement of facts. If a legible copy of a photograph or any other paper cannot be made, "the *original exhibit* shall be included in the record under

---

4. In the instant cause, the court of appeals found that appellant properly requested a complete statement of facts. *Melendez*, supra, at 30. Furthermore, on his sworn motion the trial judge found appellant to be indigent and accordingly appointed counsel to represent him and ordered the court reporter, naming her, to prepare a statement of facts on appeal. Tr. 66. The record further shows that she was serving as court reporter during certain pretrial proceedings and throughout trial and punishment phases.

We glean from the statement of facts of the first phase that the State introduced the following exhibits: three photographs of the scene (exhibits 1, 2 and 3), baggie of rocks and dirt (exhibit 4), wrapped sticks of gum (exhibit 5), a gum wrapper around three plastic packets (exhibit 6), an evidence envelope containing exhibit

6 (exhibit 7) and a diagram of the crime scene (exhibit 8)—but exhibits 4, 5, 6, and 7 do not appear in the statement of facts. At punishment the State introduced three exhibits: a stipulated prior conviction (exhibit 1a), a certified judgment and sentence for a prior conviction (exhibit 2a) and yet another certified judgment and sentence of a prior conviction (exhibit 3a)—each appears in the statement of facts.

The statement of facts consists of five volumes; the required certification by the court reporter appropriately appears at the end of the last volume. See TRAP 53(f). The court reporter certifies, *inter alia* that "this transcript of the record of proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties." Of course, it does not, thereby providing the grist for this contretemps.

order of the trial court made pursuant to Rule 51(d)."

Rule(1)(b)(6) further directs:

*"Copies of exhibits* received in each separate proceeding or hearing, including those descriptions of physical evidence, will be placed in numerical order at the end of the *statement of facts* of that proceeding or hearing, or in a separate volume if the *exhibit* material is voluminous."

█ Given the foregoing TRAP mandates and Appendix Rules, beyond peradventure this Court made abundantly clear its intent, purpose and mandates concerning exhibits. We therefore hold that when a complete statement of facts is timely requested by appellant or ordered by the trial court the court reporter shall include and display in the statement of facts copies of all admitted exhibits in the form and manner prescribed by the rules of this Court.[5]

2

█ We further hold on much the same basis that such exhibits are part and parcel of "notes," and also constitute "records," of the court reporter within intendment and for purposes of TRAP 50(e).

Contrary to notions expressed and arguments developed in *Gomez v. State,* supra, at 737–738 and 738–739, policy considerations of respective functions and usage in actual practice support the conclusion that "notes" and "exhibits" are mutually complementary products generated or perfected and maintained by the court reporter. Customarily a putative exhibit is "marked" for identification, "notes" reflect testimony given to identify it,

the proffer, any objection, the ruling and, most likely, further testimony concerning it. The exhibit thus becomes a "record" of the court reporter, an integral part of the "record of the evidence," albeit separately deposited in a repository until retrieved by the court reporter to make copies and include them in duplicate statement of facts. The completed statement of facts is presented for filing to the *appellate* clerk without regard to status of the transcript. When volumes are prepared and indexed according to the rules of this Court, with proper cross-referencing of transcribed "notes" and "records," both parties and judges of the appellate court have ready and convenient access to germane portions of that separate part of the record on appeal.

The *Gomez* court conceded that exhibits are "part of the appellate *record;* " it noted, however, that "nothing in Rule 50(a) suggests that exhibits are exclusively a component of the *statement of facts.*" 905 S.W.2d at 739 (emphasis in original). To prove its point, the court alluded to the placement of a bill of exception, *viz:* "not part of the evidence ... yet it is undeniably part of the appellate record ... [a]lthough ... *not part of the transcript* [.]" *Id.,* at n. 3. In that the court is simply twice mistaken. Where bills of exception are filed, in making up a *transcript* the clerk of court "shall include copies of ... any formal bills of exception provided for in Rule 52," TRAP 51(a); "they shall be included in the *transcript* or in a supplemental *transcript,*" TRAP 52(c)(11).

Next, the court observed that TRAP rules refer to exhibits both as being "part of the *transcript* [4] and as part of the statement of

---

5. Lurking about this procedure is a simple question at once technical in nature yet manifestly practical in reality: Since the court reporter is the recipient and collector of all *original* exhibits admitted as evidence during trial and other proceedings, but is to file them with the clerk of court, which officer of the court bears the responsibility of making *copies* for inclusion in the statement of facts?

An answer is found in V.T.C.A. Government Code § 52.047 which authorizes the official court reporter to charge a reasonable fee for a "transcript of the evidence," and an additional fee for, *inter alia:*

"(2) photostating, blueprinting, or other reproduction of *exhibits;*

(3) indexing; and

(4) preparation for filing and special binding of *original exhibits."*

Obviously the Legislature recognized those functions are reserved to the court reporter. While it is true that the court reporter must file original exhibits with the clerk of court, we have no cause to believe that beyond receiving the exhibits for safekeeping and perhaps occasionally issuing a copy thereof upon application of a citizen under Article 102.005(d), V.A.C.C.P., the clerk of court would claim a right to perform functions assigned by law to the court reporter. This legislative authorization of allowable fees to the court reporter and clerk, respectively, provides further support for the above holding of the Court.

facts.[5]" Note 4 cites TRAP 51(d); note 5 cites TRAP 53(c).

TRAP 51(d) dictates the manner and method whereby the judge may cause the trial court to order *original* exhibits sent up to the affected appellate court. With deference to the *Gomez* court, Rule 51(d) nowhere refers to the package of "firmly bound together" exhibits as "transcript." Indeed, the rule itself fails to assign responsibility to any designated officer of the court. We do know, however, that the court reporter is entitled to charge a fee for "preparation for filing and *special binding of original exhibits.*" See n.5, *ante* at 292. In any event, our concern at this juncture is with *exhibits* routinely copied to be included in the statement of facts—not with *ad hoc* special handling accorded *original* exhibits.

TRAP 53(c), which we mentioned *ante,* at 291, requiring "formal parts" of all exhibits appearing in the statement of facts be bobbed, certainly assumes that copies of all such exhibits belong in the statement of facts. And that rule is just one of many others similarly providing that exhibits are to be included in the statement of facts. See *ante,* at 291–92.

In sum, even if exhibits may be considered *sui generis,* as the *Gomez* court would hold, *id.,* at 739, still they are functionally integrated parts of the evidence and thus belong within the statement of facts. The court of appeals correctly determined that the statement of facts without all admitted exhibits is incomplete.

**III**

**A**

Before the court of appeals appellant contended that the evidence is insufficient to sustain his conviction for possession with intent to deliver a controlled substance, namely cocaine. The State responded with an analysis of the evidence deemed sufficient to uphold the verdict. In their respective presentations both parties relied on testimony concerning certain evidentiary materials collected at the scene, particularly sticks of gum in wrappers on the driver's seat of appellant's car (Exhibit 5) and a gum wrapper containing three plastic baggies of cocaine on the ground next to the rear passenger door of a patrol car nearby (Exhibit 6).

Neither exhibit was included in the appellate record (nor was Exhibit 7, the evidence envelope transmitting Exhibit 6). Unable to compare those two exhibits to determine "whether the jury could find beyond a reasonable doubt that the two gum wrappers were from the same pack of gum," the court of appeals requested the missing exhibits be sent up; it was discovered, however, that Exhibit 6, containing the cocaine had been lost. *Melendez v. State,* supra, at 29.[6] Because appellant had properly requested a complete statement of facts and did not know the exhibit was missing until the court asked to see it, the court of appeals distinguished *Culton v. State,* 852 S.W.2d 512, 514 (Tex.Cr.

---

**6.** The record does not reveal that the court reporter was ever asked to justify her certification in S.F. Vol. 5. See TRAP 56(b). It does demonstrate just such a lack of care and prudence in what should be by now routine practices to ensure that an appealing litigant, and the appellate court as well, receive the requested or ordered appellate record as the TRAP rules command.

The court reporter timely delivered to the appellate clerk the statement of facts consisting of five volumes. The court reporter had prepared indices, including Index of State's Exhibits; it omits Exhibit 7 (evidence envelope) entirely and fails to give volume and page number where an admitted exhibit is *shown,* if it is (four are not). We append a copy of that index.

However, omission of exhibits came to the attention of the court of appeals; shortly before the cause was submitted the court ordered the district clerk to forward Exhibits 5, 6, and 7 to the court. In due course the court supervisor, post trial systems, in that office reported to the court in essence that Exhibit 5(gum) was being forwarded, but that Exhibits 6 and 7 were *never filed* with the district clerk. We also append a copy of that report with its attached list. The list is on a form.

The State elaborated on its own subsequent efforts:

"... When the district clerk's office was unable to locate *exhibit six,* the court of appeals contacted the appellate prosecutor [name omitted], and informed him of the missing exhibit. A subsequent search by the [appellate prosecutor] and the trial prosecutor ... was unsuccessful."

PDR, at 3. Thus at the end of the travail, principal exhibits still unaccounted for are the crucial gum wrapper allegedly containing three packets of cocaine and the evidence envelope.

App.1993), concluded that under TRAP 50(e) appellant was entitled to a new trial and, accordingly, reversed the judgment and remanded the cause.

### B

In its PDR and Brief on the Merits the State relies almost exclusively on *Culton v. State,* supra, to sustain the only ground we granted for review.[7] But here the indigent appellant obtained a court order and made a timely request for a complete statement of facts, thereby satisfying the condition in the second sentence of Rule 50(e); the State cannot and does not contend that appellant was *at fault* in the loss or destruction of the missing exhibits, particularly the alleged cocaine in exhibit six. See and compare *Emery v. State,* 800 S.W.2d 530 (Tex.Cr.App.1990) (where request for statement is timely, and loss of notes and records not fault of appellant, new trial must be granted). Instead, as a supplementary requisite to entitlement to new trial, the State invokes that part of *Culton* in which the Court imported "principles discussed" in *Dunn v. State,* 733 S.W.2d, at 215, and converted them into a sort of self-help "burden" on the appealing party to obtain "the missing portions" and then supplement the statement of facts or, failing that, to secure an affidavit from the court reporter "explaining the absence of the missing portion" and then supplement the record, "thereby demonstrating *due diligence."* *Ibid.*

We believe the *Culton* court failed to comprehend that we formulated and promulgated TRAP 50(e) *before Dunn* was decided. Therefore, the Court could not have designed or intended to incorporate "principles discussed" in *Dunn,* or to make them "apply to analyses under Rule 50(e)." *Culton,* at 514.[8] Indeed, for support it merely asks the reader to "see" *Gibbs v. State,* 819 S.W.2d 821, 828 (Tex.Cr.App.1991).[9] In other respects, however, *Dunn* is illuminating.

Functioning under pertinent provisions of former article 40.09 the *Dunn* court recog-

---

**7.** In *Culton* the problem arose from the happenstance that two trial courts separately dealt with defendant in the same cause. In 1987 the judge of the 176th District Court granted him deferred adjudication in return for his plea of *nolo contendere.* Three years later the State filed a motion to adjudicate in the same court; but subsequently the cause was transferred to the 248th District Court. In July 1990 the judge of the latter court adjudged him guilty and imposed a sentence of confinement. *Id.,* at 513. All in the latter court, Culton gave notice of appeal the same day and the trial judge promptly appointed counsel to appeal and also ordered his court reporter to prepare a statement of facts "in said cause." Contemporaneously counsel requested the court reporter to transcribe a statement of facts of proceedings "occurring before, during and after trial;" she produced only a statement of facts from the 1990 hearing on motion to adjudicate. Counsel also filed a designation of record on appeal in the 248th court; the clerk produced relevant papers, including documents originally generated in the 176th court. In the appellate court Culton achieved a reversal of the judgment and remand for new trial because the statement of facts from the initial plea proceeding in the 176th court was not made part of the record on appeal. *Id.,* at 514; *Culton v. State,* 818 S.W.2d 839, at 840 (Tex.App.—Houston [1st] 1991).

**8.** Ironically, the *Culton* court itself garbled a significant element in the *Dunn* analysis, *viz:*
"When a trial judge orders his court reporter to prepare the entire record on appeal, a timely request to that court reporter is sufficient to comply with the *timely request mandated by Rule 50(e).* * * * The trial court's order in conjunction with appellant's *written request* for a statement of facts was sufficient to inform the court reporter of the [designated court] to prepare a statement of facts."
*Culton,* supra, at 515. But in *Dunn* there were court orders to the reporter to prepare a complete statement of facts for the indigent defendant. *Id.,* at 213–214, n. 3. Under those orders alone we concluded that Dunn was entitled to a statement of facts that included the portions missing from the statement as filed. *Ibid.* That situation is now governed by TRAP 53(j). Rule 50(e) does not in terms demand another "timely request" to the *court reporter,* and it is patently redundant to require one of the court reporter who has already been effectively ordered by the court to prepare one.

**9.** The Court *"contrasts"* Dunn with the factual situation in *Gibbs* as to whether the court reporter was ever *requested to take notes* of a certain pretrial hearing; unlike *Dunn,* it did not clearly appear that, in fact, a record was made, so the Court could not say that portion of the notes had been lost or destroyed. *Ibid.* In other words, because the default was failure to comply with TRAP 11(a)(1) (reporter must make record of proceedings when *requested* ), TRAP 50(e) never came into play. See *Gibbs,* supra, at 827–828. Obviously, that is far from the situation in the *instant cause.*

nized, acknowledged, restated and applied the rule then extant, *viz:*

> "It has long been the rule in this State that '[w]hen an appellant, through no fault of his own of his counsel's, is deprived of a part of the statement of facts *which he diligently requested,* the appellate court cannot affirm the conviction.' (citations omitted)."

*Id.,* at 214.

■ The second sentence in TRAP 50(e) has no comparable contemporaneous statutory provision; it is a natural consequence of the evolutionary process demonstrated *ante,* at n. 2. Now a "timely request" implicitly presupposes a productive exercise in "due diligence." We hold that by making a "timely request" for a complete statement of facts through a court order or directly to the court reporter, a defendant establishes the initial premise in the second sentence of TRAP 50(e), and is entitled to a new trial where portions of the statement of facts are lost or destroyed "without appellant's fault." *Ibid;* *Emery v. State,* supra, at 531 & 536.[10]

### C

Furthermore, we are confident that the factual situation in *Culton* is so remarkably different from the relatively prosaic scenario of this cause that a question of "due diligence" is not implicated in the instant cause.

The Court granted the State's PDR to determine whether Culton had met his "evidentiary burden" under TRAP 50(d) and (e). *Id.,* at 514. After reviewing the facts pertinent to the legal issue as defined, the Court determined that the point at which an appellant is charged with "due diligence" is when he *first becomes aware* that omission of some germane matter renders the statement of facts incomplete. *Culton,* supra, at 515.[11]

■ In the instant cause it is undisputed that counsel was first made aware of missing exhibits *after* the court of appeals ordered the District Clerk to forward exhibits 5, 6, and 7, and that they be filed. See *Melendez,* supra, at 30. Indeed, it was on that account that the court of appeals said that "due diligence" according to *Dunn* "is not the problem in this case." *Ibid.* We agree. The court of appeals made its order prior to the scheduled date for submission of this cause, as it is authorized to do by TRAP 55(b).

To insist this appellant was obliged to follow courses suggested in *Culton* is to exalt rote over reality of responsibilities assigned to others, and to ignore available curative procedures. The TRAP rules are intended and designed to allow and encourage appellate courts to initiate and facilitate corrective actions to remedy omissions and other defects in a record already on appeal, both

---

10. Nor do we agree that other *"Dunn* principles" as perceived in *Culton* necessarily impact related TRAP rules. A defendant who obtains a court order or, alternatively, makes a timely request for a statement of facts, but later it turns out that notes and records of the court reporter, in whole or in part, are missing, lost or destroyed—without fault on that party's part—should not be made to suffer loss of the valuable appeal of right on account of negligence or failings of others whose duties and responsibilities are to provide the wherewithal for exercising that right to fruition. See, e.g., *Gamble v. State,* 590 S.W.2d 507, at 509 (Tex.Cr.App.1979); *Timmons v. State,* 586 S.W.2d 509, at 512 (Tex.Cr.App.1979); *Young v. State,* 146 Tex.Cr.R. 220, 172 S.W.2d 500, at 501 (1943); *Rice v.State,* 135 Tex.Cr.R. 626, 122 S.W.2d 194 (1938), quoting *Gilley v. State,* 112 Tex.Cr.R. 9, 13 S.W.2d 706, at 707 (1928); see also *Dean v. State,* 900 S.W.2d 367, at 369–370 (Tex.App.—Texarkana 1995) PDR No. 619–95 granted August 23, 1995, pending.

11. The sole point of error in *Culton* was that he was entitled to a new trial because the statement of facts from the 1987 plea proceeding was lost or destroyed through no fault of his own. This Court acknowledged that order of the trial court and request by defendant were enough for the court reporter to prepare a statement of facts of the 1990 adjudication hearing. As to the 1987 proceeding, the Court declared:

> "... However, *once appellant learned* that the 1987 plea proceeding occurred in a different court, appellant had the burden to obtain or to show that he had attempted to obtain a sufficient record to support his contention. Doing nothing ... does not meet the requirements for ... showing due diligence under *Dunn."*

*Id.,* at 515. The court then proceeded to instruct counsel how to go about trying to resolve the problem of incompleteness. *Ibid;* see *ante,* at 294. In the instant cause, unlike *Culton,* the first chore is doomed to fail because from the standpoint of appellant, and the reporter as well, the "crucial" exhibit is still lost; the second smacks of useless make-work because whatever explanation the court reporter might offer will not produce the missing exhibit.

before and after submission of the cause. TRAP 55(b) & (c); see also TRAP 56(b).

Accordingly, we conclude that *Culton* is inapposite here, and thus does not control proper disposition of this cause. Because appellant made a timely request for a statement of facts, and portions thereof were lost or destroyed without his fault, appellant is entitled to a new trial.

### IV

To recapitulate, the Court has considered, determined and decided the questions of law at issue as follows:

Admitted exhibits become part and parcel of the statement of facts, and as such are notes and records of a court reporter for purposes of TRAP 50(e).

A "timely request" for a statement of facts by an indigent to the trial judge or otherwise to the court reporter is by definition one "diligently" made, and satisfies the premise in the second sentence of TRAP 50(e), leaving only to be decided whether any missing exhibit was lost or destroyed "without fault" on the part of appellant.

The court of appeals properly concluded appellant is entitled to a new trial. The judgment of the court of appeals is affirmed.

WHITE, J., concurs in the result.

McCORMICK, P.J., dissents.

---

NO. 670476 DEFENDANT'S NAME Eliseo Melendez

176 DISTRICT COURT / COUNTY CRIMINAL COURT AT LAW NO. _____ OF HARRIS COUNTY, TEXAS

Louise Steckler Court Reporter for the 176 District Court/County Criminal Court

No. _____, do hereby tender for filing to Katherine Tyra, District Clerk, Harris County, the following exhibits in the above styled and numbered cause:

EXHIBITS, INCLUDING SERIAL AND/OR MODEL NUMBER)

**STATE'S EXHIBITS**

3 Polaroids

rocks

gun

Polaroid of diagram

stipulation

3A judgment/sentences

**DEFENDANT'S EXHIBITS**

_COURT REPORTER_

HERINE TYRA, District Clerk, Harris County, Texas, do hereby acknowledge receipt of the above listed exhibits ONLY as ordered and described above responsibility as to the weight or veracity of contents in the above styled and numbered cause.

_____ 19__

12:30 A.M./P.M.

KATHERINE TYRA, District Clerk, Harris County, Texas

By _____ Deputy

REPORTER

## INDEX OF STATE'S EXHIBITS

GUILT/INNOCENCE PHASE

| NO. | DESCRIPTION | OFFERED | ADMITTED |
|-----|-------------|---------|----------|
| 1 | Photograph | 28 | 28 |
| 2 | Photograph | 28 | 28 |
| 3 | Photograph | 28 | 28 |
| 4 | Rocks | 29 | 29 |
| 5 | Gum | 33 | 33 |
| 6 | Cocaine | 96 | 96 |
| 8 | Diagram | 98 | 98 |

PUNISHMENT PHASE

| NO. | DESCRIPTION | OFFERED | ADMITTED |
|-----|-------------|---------|----------|
| 1 | Stipulation of Evidence | 5 | 5 |
| 2 | Judgment and Sentence | 5 | 5 |
| 3 | Judgment and Sentence | 5 | 5 |

Index 6

# KATHERINE TYRA
## ═══════ Harris County District Clerk ═══════

January 6, 1995

*01-94-652-CR*

Ms. Margie Thompson
First Court of Appeals
1307 San Jacinto, 10th Floor
Houston, Texas  77002

Re:  Trial Court Cause No. 676527,  The State of Texas vs.
     Eliseo Melendez in the 176th District Court, Harris
     County, Texas

Dear Ms. Thompson:

     Pursuant to your order received December 13, 1994
directing the District Clerk's office to supplement the
record with State's Exhibits 5, 6 and 7 in the above styled
and numbered case, no exhibits have been filed in the
District Clerk's office under this cause number, however,
exhibits were filed in cause number 670476, The State of
Texas vs. Eliseo Melendez in the 176th District Court.  We
are forwarding State's Exhibit No. 5, State's Exhibits 6 and
7 have not been filed in this office.  A list of the exhibits
filed is attached for your information.

     If I can be of further assistance, please call me.

                              Sincerely,

                              *Roger Warren*
                              Roger Warren, Supervisor
                              Post Trial Systems for
                              HARRIS COUNTY,   T  E  X  A  S

KT:RW:dr
Attachment
14COA_040291

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

JAN - 6 1995

MARGIE THOMPSON
CLERK

─────── 301 Fannin • P.O. Box 4651 • Houston, Texas 77210 • (71●)755-5711 ───────

♻ printed on recycled paper

MANSFIELD, Judge, concurring and dissenting.

I agree with the opinion of the majority that appellant is entitled to a new trial because a key piece of evidence—Exhibit 6 (a gum wrapper)—was somehow lost, and the court of appeals found it was unable to determine without that evidence "whether the jury could find beyond a reasonable doubt that two gum wrappers were from the same pack of gum." *Melendez v. State,* 902 S.W.2d 28, 29 (Tex.App.-Houston [1st Dist.] 1995). However, I must respectfully disagree with the opinion of the majority that exhibits at trial are part of the statement of facts and that where an exhibit has been lost or destroyed through no fault of the appellant, the appellant is entitled, under Tex.R.App.Proc. 50(e), to a new trial unless the parties agree on a statement of facts.[1]

First, it must be determined if physical exhibits fall under the category of "court reporter's notes and records" so that if they are lost through no fault of appellant's he is entitled to a new trial under TRAP 50(e) without any showing of harm to appellant, provided he made a timely request for a statement of facts. *See Culton v. State,* 852 S.W.2d 512 (Tex.Crim.App.1993). There is certainly no question that exhibits are part of the appellate record. *Durrough v. State,* 693 S.W.2d 404 (Tex.Crim.App.1985). However, it is not clear whether exhibits are part of the court reporter's "notes and records" and, therefore, part of the statement of facts. The Fourteenth Court of Appeals concluded recently that exhibits could not be neatly characterized as being solely part of the transcript or the statement of facts. As such, the loss of an exhibit would not necessarily require a new trial. *Gomez v. State,* 905 S.W.2d 735 (Tex.App.-Houston [14th Dist.] 1995).

While there can be no question that exhibits are part of the record, nothing in Rule 50(a) suggests that exhibits are exclusively a component of the Statement of Facts. If we were to hold, as some have, that exhibits are part of the court reporter's records, we would be obliged to reverse the trial court's judgment in every instance where one or more of the exhibits have been lost. Some exhibits, however, such as computer-generated records, business records, photographs, and certified photocopies of original public records can be flawlessly reconstructed with the utmost confidence. In many cases, the exhibits are of no value to the appellate court and have no impact upon the resolution of the appellant's points of error. It is a waste of judicial resources to hold that the loss of such exhibits must automatically result in a new trial.

*Gomez, supra,* at 738, 739. T.R.A.P. Rule 50(a) defines the contents of the transcript on appeal; no reference is made to exhibits in Rule 50(a). Yet, nothing in the Rules of Appellate Procedure states exhibits are part of the Statement of Facts. Rule 50(e) mandates automatic reversal where the court reporter's *notes and records* have been lost through no fault of an appellant who has made a timely request for the Statement of Facts; Rule 50(e) does not mandate reversal for loss of a physical exhibit, which, in my opinion, cannot, by a reasonable interpretation of the phrase, "reporter's notes and records," be regarded as such. *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App. 1991).

It is evident the intent of T.R.A.P. Rule 50 is to provide an appellant with a complete record of his trial so that he can exercise his right to a meaningful appeal, provided, of course, he complies with the procedural requirements of Rules 50 and 51. Should an exhibit be missing or otherwise unavailable through no fault of the appellant, error must be presumed.

However, if the State demonstrates, to the satisfaction of the reviewing court, beyond a reasonable doubt, the missing exhibits are of no value to the reviewing court and have no impact on the resolution of the appellant's points of error, then reversible error is not present. Tex.R.App.Proc. 81(b)(2); *Harris*

1. This Court granted review to determine whether physical exhibits are part of the statement of facts, and whether appellant was therefore enti-

tled to a new trial under Rule 50(e) because an exhibit was missing or lost through no fault of appellant.

*v. State*, 790 S.W.2d 568 (Tex.Crim.App. 1989).

In the present case, the court of appeals found the missing exhibit to be crucial to its determination as to appellant's second ground for review: the evidence is insufficient to sustain his conviction for possession with intent to deliver a controlled substance, namely cocaine, beyond a reasonable doubt. The court of appeals further found "without Exhibit Six this Court cannot determine what the jury saw." *Melendez, supra*, at 30. The court of appeals found, in effect, the lack of Exhibit Six to constitute harmful error and the State, in its briefs in support of its petition for discretionary review, does not provide argument sufficient to persuade me that the error was harmless beyond a reasonable doubt, or that the court of appeals' finding was erroneous.

Accordingly, I concur in the result but respectfully dissent to the reasoning of the majority opinion.

KELLER, Judge, dissenting.

The question presented in the case at bar is whether physical exhibits are part of the statement of facts or the transcript. When the court of appeals requested certain physical exhibits for inspection pursuant to Rule 51(d),[1] four exhibits were found to be missing: a baggie of rocks and dirt (exhibit 4), wrapped sticks of gum (exhibit 5), a gum wrapper around three plastic packets (exhibit 6), and an evidence envelope containing exhibit 6 (exhibit 7). Holding that the exhibits were part of the statement of facts, the Court of Appeals reversed and remanded the case for a new trial under Rule 50(e). The majority agrees, concluding that such exhibits are part of the statement of facts, and hence, their absence requires automatic reversal under Rule 50(e).[2] Because I believe that physical exhibits are not a part of the state-

ment of facts, I disagree with the majority's holding.

The majority of cases dealing with this issue were analyzed under Article 40.09, V.A.C.C.P., (repealed 1986). In Gibbs v. State, however, this Court stated that the cases decided under Article 40.09 continue to be helpful in the analysis of this point of error and that the principles discussed are still applicable to an analysis under Rule 50(e). 819 S.W.2d 821, 828 (Tex.Crim.App. 1991).

Although I concede that exhibits are part of the appellate *record*,[3] the question remains whether the exhibits are part of the statement of facts (the court reporter's notes and records) or the transcript (the clerk's records). In order to determine the correct placement of the exhibits in the record, I look to the Rules of Appellate Procedure and its Appendix.

Rule 50(a) states that the contents of the record "shall consist of the transcript and, where necessary to the appeal, the statement of facts." Rule 51 addresses matters pertaining to the transcript. Rule 51(a) lists the items that are to be included in the transcript on appeal but does not mention the inclusion of exhibits. Rule 51(b) provides, however, that any party may file a written designation with the clerk specifying matters for inclusion in the transcript and that such designation must be specific. Rule 51(d) allows for the inclusion of *original exhibits* in the transcript "when the trial court is of the opinion that [the] original papers or exhibits should be inspected by the appellate court in lieu of copies ..." In this circumstance the trial court, or the appellate court on its own initiative, may order such exhibits to be sent for the appellate court's inspection.

Rule 53 addresses matters pertaining to the statement of facts. Rule 53(a) orders the

---

1. All references to rules are to the Texas Rules of Appellate Procedure unless otherwise provided.

2. Rule 50(e) provides:

   "When the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the appellate court as in other cases. If the appellant has

   made a timely request for a statement of facts, but the court reporter's notes and records have been lost or destroyed without appellant's fault, the appellant is entitled to a new trial unless the parties agree on a statement of facts."

3. *Durrough v. State*, 693 S.W.2d 404, 405 (Tex. Crim.App.1985).

appellant to make a written request to the court reporter designating the portion of the evidence to be included in the statement of facts. There is no reference made to the automatic inclusion of exhibits.

Moreover, Rule 11(a)(4) provides that the duties of the court reporter shall include the filing of all exhibits with the clerk. Hence, after the completion of the trial, the actual exhibits become part of the clerk's records, not the court reporter's. It is the clerk's duty to file the transcript. Rule 51(c).

This Court has also provided guidance concerning the transcript and the statement of facts in an Appendix for Criminal Cases to the Texas Rules of Appellate Procedure.[4] Rule 1 of the Appendix gives the instructions for the format of both the transcript and the statement of facts on appeal and Rule 1(b)(4), (5), and (6) are helpful in the evaluation of the placement of exhibits. For example, the relevant part of Rule 1(b) reads as follows:

"... The court reporter shall also show in a separate table in the first volume of the *statement of facts* the page at which any *exhibit* or other document copied therein appears, and the pages at which it is identified (when an *exhibit* is identified by more than one witness, page references shall be made where each witness identified the *exhibit.*)" (Emphasis added.)

Likewise, Rule 1(b)(5) is directive for the placements of exhibits and states:

"(5) Unless ordered otherwise pursuant to Rule 51(d), neither *physical evidence* (gun, clothing, controlled substance, etc.) nor ordinarily an *original exhibit* is to be included in the record on appeal. Each item of physical evidence must be described alone on a separate piece of paper; it and a legible copy of other exhibits will appear respectively on a separate page of the *statement of facts*. However, when a legible copy of a photograph or any paper exhibit may not be made, the original exhibit shall be included in the record under

order of the trial court made pursuant to Rule 51(d)." (Emphasis added.)

Rule 1(b)(6) further directs:

"*Copies of exhibits* received in each separate proceeding or hearing, including those *descriptions of physical evidence*, will be placed in numerical order at the end of the *statement of facts* of that proceeding or hearing, or in a separate volume if the exhibit material is voluminous." (Emphasis added.)

The foregoing provisions lead me to conclude that original exhibits are not part of the statement of facts but are part of the transcript, if so designated by the trial or appellate court. Rule 51(d). Summary descriptions of physical exhibits and copies of other exhibits are part of the statement of facts. Appendix Rule 1(b)(6).

When any portion of the record is lost or destroyed, the first sentence of Rule 50(e) allows for substitution with a duplicate even if the appellant does not consent to the substitution. *Harris v. State*, 790 S.W.2d 568, 576 (Tex.Crim.App.1990). Therefore, if the missing portion of the record is the description of the physical exhibits at the end of statement of facts, the court reporter, upon request, should be allowed to reconstruct the summaries for purposes of the appeal. If the descriptions are contained elsewhere in the record but are not in the proper form, the appellate court should determine whether the failure to include the summaries of the exhibits hinders the court's review of the case. If the missing descriptions in no way impede the review of the record, the alternate location of the descriptions should suffice. It would not be judicially economical to remand every case back to the trial court to have the court reporter insert the pages at the end of the statement of facts if there are sufficient descriptions located elsewhere.

As for the physical exhibits themselves, because they are not part of the statement of facts but are part of the transcript (if requested), loss of such exhibits does not produce an automatic reversal under Rule 50(e). I do not mean to suggest that a party could never obtain reversal based upon missing

---

4. The provisions in the appendix are a directive by the Court of Criminal Appeals pursuant to the provisions of Rules 51(c) and 53(h), T.R.A.P., and

became effective simultaneously with the Texas Rules of Appellate Procedure on September 12, 1986.

·physical exhibits. If harm exists,[5] the case should be reversed, so long as the exhibit was specifically identified in a timely filed written designation of matters to be included in the transcript. *See* Rule 51(b).

In the case at hand, the summary descriptions of the physical exhibits were not included in the statement of facts. There is an exhibit list located in the front of the statement of facts which gives a page reference for each exhibit admitted over the course of the proceedings, but that list does not appear to fully describe the physical exhibits in the case and it does not include exhibit 7. Nevertheless, the descriptions could be reconstructed by the court reporter and do not mandate reversal.

Obviously, the physical exhibits themselves cannot be reconstructed. However, a reversal on account of those missing original exhibits would be proper only if appellant had specifically identified the exhibits in his designation of matters for inclusion in the transcript[6] and if he were harmed by their absence. I would reverse the Court of Appeals' decision and remand the case for consideration of those two issues.

I respectfully dissent.

---

**5.** I express no opinion on the standard of harm applicable, or who must shoulder the burden of proof. Because my opinion is a dissent, I leave those difficult issues for another day.

**6.** A designation of matters for inclusion in the transcript does not appear in the record before us, but whether such a designation was made is a determination that may be made by the Court of Appeals in the first instance.